No. 24-50984

# In the United States Court of Appeals for the Fifth Circuit

SPIRIT AEROSYSTEMS, INCORPORATED,

*Plaintiff-Appellee,*

*v.*

W. KENNETH PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS; JANE NELSON, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE OF TEXAS,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## BRIEF FOR APPELLANTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

RYAN S. BAASCH
Associate Deputy Attorney General
Ryan.Baasch@oag.texas.gov

Counsel for Defendants-Appellants

## Certificate of Interested Persons

No. 24-50984

### Spirit Aerosystems, Incorporated,

*Plaintiff-Appellee,*

*v.*

### W. Kenneth Paxton, in his official capacity as Attorney General of Texas; Jane Nelson, in her official capacity as Secretary of State of Texas,

*Defendants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants, as governmental parties, need not furnish a certificate of interested persons.

/s/Ryan S. Baasch
Ryan S. Baasch
*Counsel for Defendants-Appellants*

## Statement Regarding Oral Argument

Appellants request oral argument. The district court held that a 100-year-old Texas statute that the Texas Attorney General routinely employs to conduct investigations facially violates the Fourth Amendment. If allowed to stand, this result will seriously impair the Attorney General's ability to discharge his duties. Appellants believe that oral argument will assist the Court in resolving the constitutional questions presented.

# TABLE OF CONTENTS

Certificate of Interested Persons .......................................... ii

Statement Regarding Oral Argument ................................. iii

Table of Authorities ....................................................... vi

Introduction ................................................................ 1

Statement of Jurisdiction ................................................ 4

Issues Presented ........................................................... 5

Statement of the Case .................................................... 6

    A. The Attorney General's Investigative Authority .............. 6

    B. Spirit's Conduct Under Investigation ........................... 8

    C. Procedural History ............................................... 9

Summary of Argument .................................................. 10

Standard of Review ...................................................... 12

Argument .................................................................. 12

  I. RTE Subpoena Recipients Have Multiple Avenues for
     Precompliance Review. ............................................. 12

    A. Texas Appeals Courts Have Repeatedly Reviewed
      RTE Subpoenas. ................................................ 12

    B. Modern Texas Procedural Doctrine Provides at
      Least Two Paths to Precompliance Review. ..................... 14

      1. RTE Subpoena Recipients Can Bring an *Ultra*
        *Vires* Suit to Obtain Precompliance Review. ............... 16

      2. RTE Subpoena Recipients Can Bring an Action for
        Protective Order to Obtain Precompliance Review. ...... 18

    C. An RTE Subpoena Recipient Will Always Obtain
      Review Before Penalties are Imposed. ........................... 20

    D. *City of Los Angles v. Patel* is Materially
      Distinguishable. ................................................ 26

  II. Spirit Cannot Sustain a Facial Challenge Based on the
     RTE Statute's Allowance for the Attorney General to
     Demand "Immediate" Compliance. ................................. 27

iv

A.  Spirit Lacks Standing to Challenge the RTE Statute's "Immediate" Compliance Provision. ............... 28

B.  Spirit Cannot Sustain a Facial Challenge to the RTE Statute................................................................... 30

III. A Reasonable Limiting Construction Avoids Any Potential Constitutional Problem.........................................34

Conclusion ........................................................................38

Certificate of Service .............................................................39

Certificate of Compliance .......................................................39

# Table of Authorities

**Page(s)**

**Cases:**

*A&R Engineering & Testing, Inc. v. Scott*, 72 F.4th 685 (5th Cir. 2023).................. 28

*Acosta v. American Postal Workers Union*,
   2017 WL 6886673 (C.D. Cal. Dec. 4, 2017) ...................................... 36

*Alliborne v. Freshour*,
   2017 WL 5663607 (Tex. App.—Austin, Nov. 21, 2017, pet.
   dism'd) ...........................................................................18, 19

*Annunciation House, Inc. v. Paxton*, No. 2024DCV0616 (205th D. Ct.
   El Paso Cnty., Tx.)................................................................... 33

*Baca v. Ladd*,
   77 F.3d 480 (5th Cir. 1996) .................................................... 29

*Bailey v. Fair & Walker Unit Owners Ass'n*,
   2023 WL 2119490 (N.D. Ga. Jan. 17, 2023) .................................... 37

*Belle Fourche Pipeline Co. v. United States*,
   751 F.2d 332 (10th Cir. 1984) ................................................. 21

*Bernard v. Gulf Oil Corp.*,
   841 F.2d 547 (5th Cir. 1988)................................................ 2, 28

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ............................................................ 28

*Catalyst Strategic Advisors, L.L.C. v. Three Diamond Capital Sbc,
   L.L.C.*, 93 F.4th 870 (5th Cir. 2024) .......................................... 12

*Chaney v. Dreyfus Serv. Corp.*,
   595 F.3d 219 (5th Cir. 2010)............................................12, 16, 19

*Chesterfield Fin. Co. v. Wilson*,
   328 S.W.2d 479 (Tex.App.—Eastland, 1959, no writ)...............1, 6, 7, 13, 14, 16

*City of El Cenizo v. Texas*,
   890 F.3d 164 (5th Cir. 2018) .............................................. 26, 30

*City of El Paso v. Heinrich*,
   284 S.W.3d 366 (Tex. 2009) .............................................. 15, 17

*City of Elsa v. M.A.L.*,
   226 S.W.3d 390 (Tex. 2007) .............................................. 16, 17

*City of Los Angeles v. Patel*,
   576 U.S. 409 (2015) .......................................................*passim*

*City of Pasadena v. Smith*,
   292 S.W.3d 14 (Tex. 2009) .................................................... 34

*Clapper v. Amnesty Intern., USA*,
   568 U.S. 398 (2013)...................................................................... 25-26

*Comm'n for Law. Discipline v. Benton*,
   980 S.W.2d 425 (Tex. 1998) ............................................................ 35

*Corporacion Insular de Seguros v. Garcia*,
   876 F.2d 254 (1st Cir. 1989) ...................................................... 23, 24

*Cotropia v. Chapman*,
   721 F. App'x 354 (5th Cir. 2018).......................................... 1, 19, 21

*Cotropia v. Chapman*,
   978 F.3d 282 (5th Cir. 2020) .................................................... 26, 34

*Cruz v. Abbott*,
   849 F.3d 594 (5th Cir. 2017) ........................................................ 27

*Cuomo v. Clearing House Ass'n*,
   557 U.S. 519 (2009) ........................................................................ 6

*Day v. State*,
   489 S.W.2d 368 (Tex. App.—Austin, 1972, writ ref'd n.r.e.)........... 25

*Dika-Homewood, LLC v. Off. Max*,
   2022 WL 3682214 (S.D. Fla. June 16, 2022)................................... 37

*Donovan v. Lone Steer*,
   464 U.S. 408 (1984) ............................................................. 8, 17, 22

*El Paso Indep. Sch. Dist. v. McIntyre*,
   584 S.W.3d 185 (Tex. App.—El Paso, 2018, no pet.) ..................... 18

*ESI/Emp. Sols. v. City of Dallas*,
   528 F. Supp. 3d 564 (E.D. Tex. 2021)......................................... 3, 36

*Essgee Co. of China v. United States*,
   262 U.S. 151 (1923) ...................................................................... 6, 35

*In re Gee*,
   941 F.3d 153 (5th Cir. 2019) ........................................................ 29

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) ........................................................ 21

*In re Grand Jury Proceedings*,
   802 F.3d 57 (1st Cir. 2015) ........................................................... 37

*Hall v. McRaven*,
   508 S.W.3d 232 (Tex. 2017).......................................................... 16

*Hang Li et al. v. Spirit Aerosystems*,
   No. 1:23-cv-03722-PAE (S.D.N.Y) ............................................. 8, 9

*Honors Academy, Inc. v. Texas Educ. Agency*,
   555 S.W.3d 54 (Tex. 2018)............................................................ 17

*Humble Oil & Refining Co. v. Daniel*,
259 S.W.2d 580 (Tex. App.—Beaumont, 1953)................................. 12, 13, 14, 17

*Jackson v. Metro. Council HRA Mgmt*,
2011 WL 1486039 (D. Minn. Mar. 18, 2011) ......................................................15

*In re Klein*,
776 F.2d 628 (7th Cir. 1985).......................................................................... 23

*Lewis v. Casey*,
518 U.S. 343 (1996) ...................................................................................... 29

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024) ...................................................................................31

*Mallory v. Norfolk S. Ry. Co.*,
600 U.S. 122 (2023) ...................................................................................... 32

*Miura Corp. v. Davis*,
2020 WL 5224348 (C.D. Cal. June 25, 2020) ................................................... 20

*Moody v. NetChoice*,
144 S. Ct. 2383 (2024) ........................................................................... 30, 32

*Nat'l Fed. of the Blind of Texas, Inc. v. Abbott*,
647 F.3d 202 (5th Cir. 2011) ......................................................................... 35

*Nat'l. Horsemen's Benevolent & Protective Ass'n v. Black*,
53 F.4th 869 (5th Cir. 2022) .......................................................................... 30

*New York v. Ferber*,
458 U.S. 747 (1982)....................................................................................... 35

*Okla. Press Publ'g. Co. v. Walling*,
327 U.S. 186 (1946) ....................................................................................8, 14

*Patel v. Tex. Dep't of Licensing & Reg.*,
469 S.W.3d 69 (Tex. 2015) ..............................................................................17

*Reisman v. Caplin*,
375 U.S. 440 (1964)....................................................................................... 21

*Robertson v. Sw. Bell Tel. Co.*,
403 S.W.2d 459 (Tex.App.—Tyler, 1966)......................................................... 37

*Rose v. Doctors Hosp.*,
801 S.W.2d 841 (Tex. 1990)........................................................................... 25

*Roy v. City of Monroe*,
950 F.3d 245 (5th Cir. 2020)........................................................................... 35

*Schraer v. Texas Health & Hum. Servs.*,
2014 WL 586036 (Tex. App.—Corpus Christi--Edinburg, Feb. 13,
2014) (mem. op.) ..........................................................................................15

*See v. City of Seattle*, 387 U.S. 541 (1967) ................................................. 37

*Shriver v. Leech*,
    612 S.W.2d 454 (Tenn. 1981)............................................................. 23
*State v. Dyer*,
    200 S.W.2d 813 (Tex. 1947)......................................................... 22, 24
*State v. Farmers' Loan & Tr. Co.*,
    17 S.W. 60 (Tex. 1891)................................................................7, 21
*State v. Mem'l Benevolent Soc'y of Tex.*,
    384 S.W.2d 776 (Tex. App.—Austin 1964, writ ref'd n.r.e.) ........................... 24
*State v. Stephens*,
    663 S.W.3d 45 (Tex. Crim. App. 2021)..................................................... 25
*State v. Zurawski*,
    690 S.W.3d 644 (Tex. 2024)..........................................................16, 25
*In re Subpoena Duces Tecum*,
    228 F.3d 341 (4th Cir. 2000)............................................................ 20
*T D X Energy, LLC v. Chesapeake Operating, Inc.*,
    857 F.3d 253 (5th Cir. 2017)........................................................... 12
*Tera II, LLC v. Rice Drilling*,
    2022 WL 1114943 (S.D. Ohio Apr. 14, 2022) ............................................ 37
*United States v. Hansen*,
    599 U.S. 762 (2023) ................................................................34, 37
*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) ................................................................... 23
*United States v. Rahimi*,
    602 U.S. 680 (2024) ...............................................................3, 32, 38
*Village of Hoffman Ests. v. Flipside, Hoffman Ests.*,
    455 U.S. 489 (1982) ............................................................30, 33, 34
*Voting for America, Inc. v. Steen*,
    732 F.3d 382 (5th Cir. 2013)........................................................... 35
*Walker-Texas Investment Corporation v. State*,
    323 S.W.2d 603 (Tex. App.—Austin, 1959) ..................................13, 14, 21, 22
*Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442
    (2008) ................................................................................ 32
*Wilson v. United States*,
    221 U.S. 361 (1911) ................................................................. 6, 32
*Word of Faith World Outreach v. Morales*,
    986 F.2d 962 (5th Cir. 1993) .......................................................... 27
*Ex Parte Young*, 209 U.S. 123 (1908) ..............................................15, 16

*Zadeh v. Robinson*,
  928 F.3d 457 (5th Cir. 2019) ........................................................33, 34

**Constitutional Provisions, Rules, and Statutes:**

15 U.S.C. § 49 ............................................................................ 37

28 U.S.C.:
  § 1291 ..................................................................................... 4
  § 1331 ..................................................................................... 4

42 U.S.C. § 1983 .......................................................................... 4

Tex. Const. art. IV, § 22 .............................................................1, 6

Fed. R. Civ. P.:
  45 ........................................................................................... 36
  45(a)(1)(A)(iii) ....................................................................... 36
  45(d)(3)(A)(i) ......................................................................... 37
  56(a) ....................................................................................... 12
  81(a)(5) ................................................................................... 18
  17(c) ....................................................................................... 20

Tex. Bus. Orgs. Code:
  § 1.002(22) ............................................................................... 7
  § 1.002(29) ............................................................................... 7
  § 9.001 ..................................................................................... 8
  § 12.151 ...........................................................................1, 6, 32
  § 12.152 .............................................................. 2, 7, 11, 31, 36
  § 12.153 ..............................................................................7, 32
  § 12.155 ..............................................................................7, 21
  § 12.156 ............................................................................ 7, 24-25
  § 12.259 ...........................................................................19, 21

Tex. Code Crim. Pro. 14.01(b) .................................................... 25

Tex. Gov't Code:
  § 311.021(1) ............................................................................ 35
  § 311.032(c) ............................................................................ 36

Tex. Occ. Code § 153.007(e) ........................................................19

Tex. R. Civ. P.:
  176.6(e) ................................................................................... 18
  192.6(b) ................................................................................... 18
  781........................................................................................ 7, 22

**Other Authorities:**

Br. for Petitioner, *City of Los Angeles v. Patel*, 2014 WL 7205508 ........................... 27

Reply Br. for Petitioner, *City of Los Angeles v. Patel*, 2015 WL 737955 ................... 27

# Introduction

The Texas Attorney General routinely subpoenas corporate records using a Texas law known as the Request to Examine (RTE) Statute. Although that statute does not on its face tell corporations how to obtain precompliance review of a subpoena, this Court has correctly recognized that other generally applicable provisions of "Texas law contemplate[] the opportunity for precompliance review of an administrative subpoena." *Cotropia v. Chapman*, 721 F. App'x 354, 358 n.2 (5th Cir. 2018). The district court, however, concluded that Texas law does **not** contemplate this review, and on that basis declared this statute facially unconstitutional under *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). That was wrong and should be reversed.

The Texas Attorney General has a constitutional obligation to "inquire into the charter rights of all private corporations." Tex. Const. art. IV, § 22. Over 100 years ago, the Texas Legislature concluded an "emergency" existed, because no statute expressly empowered the Attorney General to demand corporate records. *Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479, 482 (Tex.App.—Eastland, 1959, no writ). Thus, the RTE Statute was born. Tex. Bus. Orgs. Code §§ 12.151 *et seq*. And for over 100 years, that statute has been used to subpoena corporate documents in countless settings, and has generated multiple appellate court decisions without interruption.

The district court's holding revived the emergency the Legislature thought it had ended. It concluded the RTE Statute is facially unconstitutional because nothing in the text of *the statute itself* provides a mechanism for subpoena recipients to obtain "precompliance review" within the meaning of *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). But *Patel* does not dictate to States where in their code books to codify

judicial review provisions. And this case is nothing like *Patel* because, unlike in *Patel*, a subpoena recipient here has at least three options for precompliance review: (1) a petition for protective order under the Texas Rules of Civil Procedure; (2) an *ultra vires* action for injunctive relief against the Attorney General; or (3) review in a defensive posture, before the Attorney General can impose a penalty for non-compliance. At most, *Patel* forces a State to offer only one of these options—but Texas offers all three.

To nevertheless conclude that the RTE Statute does not permit precompliance review, the district court placed enormous emphasis on the statute's allowance for the Attorney General to demand compliance with a subpoena "immediately." Tex. Bus. Orgs. Code § 12.152.  In the district court's view, a demand for "immediate" compliance is incompatible with precompliance review as a practical matter because it forces a corporation to comply before it can actually get into a courtroom. But the district court erred because Appellee Spirit Aerosystems, Inc. (Spirit) was not asked to comply "immediately"; it was first given 20 days and then afforded multiple extensions. And it is well-established that "a plaintiff lacks standing to litigate injurious conduct to which he was not subjected." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988).

Moreover, Spirit's challenge to the statute was facial, which meant Spirit had to show the statute is unconstitutional in all of its applications. Far from making that showing, the undisputed record shows that the Attorney General almost always gives RTE subpoena recipients weeks to comply and does not demand immediate compliance. That is also fatal for Spirit because unless the "hypothetical faults" it identifies

in the statute "occur in every case, they do not justify invalidating" the statute facially. *United States v. Rahimi*, 602 U.S. 680, 701 n.2 (2024).

To the extent the statutory allowance for an "immediate" demand is unconstitutional, that single word can and should be severed from the statute to preserve its constitutionality. "Rules and statutes authorizing subpoenas ***often*** omit a minimum number of days for complying," and leave it to the issuing person to select a number of days that fit the circumstances. *ESI/Emp. Sols. v. City of Dallas*, 528 F. Supp. 3d 564, 575 n.3 (E.D. Tex. 2021) (emphasis added). An RTE Statute without the word "immediate" would become just like all of these other rules and statutes—designating no particular time for compliance, and leaving it to the Attorney General to select a compliance date in the first instance.  Courts could quash unreasonable demands on a case-by-case basis—there would be no basis to declare the statute itself unconstitutional.

This Court should reverse.

## Statement of Jurisdiction

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal from a final decision of the district court. ROA.913-14. The district court had jurisdiction under 28 U.S.C. § 1331 because this case arises under 42 U.S.C. § 1983 and the Fourth Amendment. ROA.18-19. This appeal is timely because the district court adopted the Report & Recommendation and issued a final judgment on December 9, and the notice of appeal was filed on December 10. ROA.915.

## Issues Presented

1.  Whether the Texas Request to Examine Statute precludes precompliance review and so facially violates the Fourth Amendment.

2.  Whether Spirit has standing to challenge the RTE statute's "immediate" compliance provision.

3.  Whether the RTE Statute's "immediate" provision renders the statute facially unconstitutional.

## STATEMENT OF THE CASE

### A.  The Attorney General's Investigative Authority

The RTE Statute codifies the Attorney General's authority to supervise corporate compliance with State laws. "The corporation is a creature of the state." *Wilson v. United States*, 221 U.S. 361, 383 (1911). "It receives certain special privileges and franchises, and holds them subject to the laws of the state." *Id.* One well-established trade-off for these special privileges is that a State may "demand the production of the corporate books and papers" to determine "how the[] [corporate] franchise[] has been employed." *Id*; s*ee also Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 525 (2009) (same). This widely recognized right is known as the "visitatorial power." *Essgee Co. of China v. United States*, 262 U.S. 151, 155–56 (1923).  Governments have long used visitatorial powers "to detect the abuses [corporations] ha[ve] committed, to discover its violations of law[,] and to inflict punishment by forfeiture of franchises or otherwise." *Id.* at 155–56.

The Texas Constitution charges the Attorney General with exercising this power. Tex. Const. art. 4, § 22. In "1907," the Texas Legislature recognized "there was an emergency" because no statute expressly authorized the Attorney General to subpoena corporate records. *Chesterfield*, 328 S.W.2d at 482. The Legislature responded with the RTE Statute. *See id.* (describing the RTE Statute's original, materially similar version). The RTE Statute is now codified at Texas Business Organizations Code §§ 12.151 *et seq.* The RTE statute provides the Attorney General authority to investigate a corporation's violations of "its governing documents" or

"any law of this state." Tex. Bus. Orgs. Code § 12.153. It also provides three provisions particularly relevant to Spirit's constitutional challenge.

First,

> To examine the business of a [corporate[1]] entity, the attorney general shall make a written request to a managerial official, who shall immediately permit the attorney general to inspect, examine, and make copies of the records of the entity.

Tex. Bus. Orgs. Code § 12.152. The Attorney General makes these requests through a written request known as an RTE subpoena.

Second, a corporation that "fails or refuses" to comply with an RTE may lose its right to "do business in this state." *Id.* § 12.155. To enforce this provision, the Attorney General must bring in court what is known as a "quo warranto" action where the corporation is permitted by law to raise any defenses available. *State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (Tex. 1891) ("must" be done through court process); Tex. R. Civ. P. 781.

Third, a corporate officer is subject to a misdemeanor penalty if he "fails or refuses" to comply with an RTE subpoena. Tex. Bus. Orgs. Code § 12.156. Importantly, and as explained *infra* 25-26, the Attorney General lacks authority to enforce this provision.

The Attorney General has no right under this statute to seize records, nor to enter a corporation's premises without consent. *Chesterfield*, 328 S.W.2d at 481

---

[1] The statute refers to a "filing entity or foreign filing entity." Definitionally, these are corporations that, respectively, are Texas-based or based in another State but registered to do business in Texas. *See, e.g.*, Tex. Bus. Orgs. Code § 1.002(22), (29).

("The Attorney General has not attempted to and does not claim the right to 'seize' the records of appellants."). Accordingly, RTE subpoenas are administrative subpoenas. *See, e.g.*, *Okla. Press Publ'g. Co. v. Walling*, 327 U.S. 186, 189 (1946) (administrative subpoenas definitionally seek "the production of specified records"). And they are not, by contrast, "searches," which definitionally entail a "non-consensual entr[y]." *Donovan v. Lone Steer*, 464 U.S. 408, 414 (1984).

## B. Spirit's Conduct Under Investigation

Spirit manufactures aircraft components. ROA.831. It is the main aircraft parts supplier to the Boeing Company. *Id.* Spirit operates a facility near the Dallas Love Field airport. *Id.* To operate that facility, Texas law required that Spirit register as a foreign filing entity under the Texas Business Organization Code. *Id.* (citing Tex. Bus. Orgs. Code § 9.001).

There has been a well-publicized and notorious "series of malfunctions involving Boeing 737 Max jets." ROA.832. Moreover, there is an ongoing class action lawsuit against Spirit brought by shareholders alleging the company has made serious misrepresentations about product quality and manufacturing. *See Hang Li et al. v. Spirit Aerosystems*, No. 1:23-cv-03722-PAE (S.D.N.Y). Because Texans are regular passengers on Boeing aircraft, and thus indirect consumers of Spirit's products, the Attorney General has a particularly strong interest in investigating the underlying allegations to evaluate whether unlawful acts have occurred.

On March 28, 2024, the Attorney General issued an RTE subpoena to Spirit requesting that the company produce documents relevant to the concerning revela-

tions above, with a 20-day deadline. ROA.832. The subpoena sought documents falling within certain narrow specifications, divided between those concerning Spirit's representations about manufacturing defects and those concerning the company's diversity, equity, and inclusion (DEI) commitments. *Id.*

At Spirit's request, the Attorney General granted two extensions beyond the initial twenty-day deadline to produce responsive documents, and a third extension to allow for the parties to litigate cross-motions for summary judgment. ROA.16-17.

## C. Procedural History

In May 2024, Spirit filed this lawsuit against the Attorney General contending that the RTE Statute is facially unconstitutional because it gives subpoena recipients no way to obtain precompliance review. ROA.10-21. Ostensibly, Spirit wants precompliance review to litigate its contention that the Attorney General is "reaching outside the territorial bounds of the State" and that he cannot "investigate DEI." ROA.935.

To clarify certain legal misconceptions about the subpoena, the Attorney General thereafter rescinded the original, ROA.437, and issued a revised one to Spirit, with a new 20-day deadline to produce the requested documents. ROA.833; ROA.440-41. That new subpoena put Spirit on notice of important procedural rights, including pathways to obtain precompliance review, and that the "Attorney General will not dispute the availability of judicial review." ROA.441.

The parties cross-moved for summary judgment. The Magistrate Judge issued a Report and Recommendation (R&R) recommending to grant Spirit's motion for summary judgment and deny the Attorney General's. ROA.828-52. The R&R also

recommended declaring the RTE Statute facially unconstitutional. ROA.851. The R&R provided two reasons for that recommendation. First, the "RTE Statute . . . lacks any mechanism that would allow a [corporation] to seek precompliance review of the reasonableness of a Request to Examine." ROA.838. Second, and relatedly, the "RTE statute requires an entity's managerial official to 'immediately permit' the Attorney General access to the entity's records." ROA.836.

The Attorney General filed objections to that R&R. ROA.853-80. But the district court summarily denied the Attorney General's objections without explanation and adopted the R&R. The resulting order declared the RTE Statute facially unconstitutional and enjoined the Attorney General from enforcing the subpoena it issued to Spirit. ROA.909-11.

This appeal followed.

## Summary of Argument

I.    Texas State Court precedent forecloses Spirit's argument that precompliance review is unavailable to RTE subpoena recipients. There is a rich history of Texas appeals courts conducting review—including precompliance review—of RTE subpoenas. And modern Texas procedural doctrine provides Spirit at least two straightforward paths to precompliance review. Spirit is also guaranteed judicial review before it would suffer any penalties for noncompliance. All of those options sharply distinguish *Patel*, where the government insisted all the way up to the Supreme Court that precompliance review was unavailable by design. *City of Los Angeles v. Patel*, 576 U.S. 409, 421 (2015) (government did "not even attempt to argue

that [its code] affords hotel operators any opportunity whatsoever" for precompliance review).

II.     Spirit also cannot establish facial unconstitutionality based on the RTE Statute's allowance for the Attorney General to demand "immediate" compliance. Tex. Bus. Orgs. Code § 12.152. Spirit lacks standing to challenge the RTE Statute on this basis because it was not subject to a demand for "immediate" compliance. Moreover, the fact that the "RTE statute *authorizes* the Attorney General to demand" immediate access when he deems warranted, ROA.899 (emphasis added), does not mean the statute is unconstitutional in all of its applications, such as the many applications (like here) where he gives subpoena recipients weeks to comply.

III.    The district court also failed to consider a reasonable limiting construction to save the RTE Statute's constitutionality.  Here, simply excising the word "immediate" from the RTE Statute would provide an easy fix and would align the RTE Statute with scores of other subpoena statutes that federal courts routinely encounter.

## STANDARD OF REVIEW

The Court reviews "grants of summary judgment de novo, applying the same standard as the district court." *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Capital Sbc, L.L.C.*, 93 F.4th 870, 874 (5th Cir. 2024). The Court "'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

## ARGUMENT

## I. RTE Subpoena Recipients Have Multiple Avenues for Precompliance Review.

### A. Texas appeals courts have repeatedly reviewed RTE subpoenas.

There is abundant Texas appeals court precedent conducting merits review of RTE subpoenas. Because no Texas Supreme Court opinion even hints that these precedents were wrong to conduct such review, the opinions were functionally binding on the district court under the *Erie* doctrine. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) ("In making an *Erie* guess, we defer to intermediate state appellate court decisions, unless convinced by other persuasive data that the highest court of the state would decide otherwise." (citation omitted)); *T D X Energy, LLC v. Chesapeake Operating, Inc.*, 857 F.3d 253, 260 (5th Cir. 2017) (same).

A Texas appeals court first conducted RTE subpoena review in *Humble Oil & Refining Co. v. Daniel*, 259 S.W.2d 580 (Tex. App.—Beaumont, 1953). The court expressly held that "the authority of the Attorney General to act as he did" when he issued an RTE subpoena was a "justiciable controversy." *Id.* at 588; *see also* ECF No. 18-5 (putting Spirit on notice of this case). The opinion held that the Attorney

General has broad power, consistent with the Fourth Amendment, to issue RTE subpoenas. *Humble Oil*, 259 S.W.2d at 589. But the corporation also scored a win blocking the Attorney General from using the subpoenaed documents in another, pre-existing litigation. *Id.* at 591.[2] In other words, *Humble Oil* confirmed over 70 years ago that RTE subpoena recipients have judicial recourse, *contra* Spirit's lead argument.

But there is more. In *Chesterfield*, a Texas appeals court conducted precompliance review of a corporation's claim that the Attorney General should not be allowed to copy records that might show usury law violations. 328 S.W.2d at 481. The district court "granted a restraining order" against the RTE. *Id.* at 480. But the appeals court concluded that an inquiry into usury law violations was a proper use of the RTE Statute. *Id.* at 482. So the corporation ultimately lost the case on the merits. But the court never questioned that precompliance review was available (such a conclusion would make no sense in light of *Humble Oil*) and so the case plainly supports that RTE subpoenas are indeed reviewable precompliance.

And in *Walker-Texas Investment Corporation v. State*, a Texas appeals court conducted review of a corporation's reasons for refusing to produce records. The corporation "did not at any time" produce documents to the Attorney General. 323 S.W.2d 603, 606 (Tex. App.—Austin, 1959). Among its reasons were that the Attorney General's signature on the RTE letter was affixed by the Attorney General's

---

[2] The procedural posture of *Humble Oil* is unusual; the corporation there produced its documents "under protest" and then sued to have the documents *returned*. 259 S.W.2d at 583. But nothing in the opinion or Texas procedural laws indicate that this happenstance made any difference to the subpoena's reviewability.

"secretary," instead of the Attorney General personally. *Id.* at 605. The corporation was able to raise a blunderbuss of other arguments, and even obtained testimony from an assistant attorney general on the circumstances under which the RTE subpoena was served, and whether "reporters and news photographers" were present. *Id.* at 607.  (The corporation's frivolous bases for refusing to produce documents ultimately resulted in the Attorney General exercising his discretion to ask a court to terminate the corporation's charter. *Id.* at 607.)

Importantly, all of these cases rejected Fourth Amendment challenges to the RTE Statute. *Humble Oil*, 259 S.W.2d at 589 ("We believe that the [RTE Statute is] not in violation of the constitutional inhibitions against unreasonable searches and seizures."); *Chesterfield*, 328 S.W.2d at 480; *Walker-Texas*, 323 S.W.2d at 606. That is critical because, although *Patel* had not yet been decided when these opinions issued, the Supreme Court had nevertheless amply explained that "provisions for judicial review" are necessary in administrative subpoenas. *Okla. Press*, 327 U.S. at 212. The most reasonable inference, then, is that these Texas appellate opinions upheld the RTE Statute because, among other things, judicial review was available. After all, each of these opinions *conducted* just such review—so it would have been illogical for them to hold that review was, in fact, unavailable.

## B.  Modern Texas procedural doctrine provides at least two paths to precompliance review.

The foregoing cases were decided in an era when Texas courts were not as precise about how and why they were exercising jurisdiction. Throughout this litigation Spirit has seized on this wrinkle and contended that modern "sovereign immunity"

doctrine either shows that these cases were wrong to exercise jurisdiction and/or that Spirit has no pathway to litigate its objections now. *See, e.g.*, ROA.933 (Spirit arguing: "[O]ur point[] is that if there's going to be a waiver of sovereign immunity, it has to be by the legislature."). This artifice is largely what persuaded the district court to conclude that precompliance review is unavailable. *See* ROA.849. ("None of the [foregoing] cases the Attorney General cites even discuss the sovereign immunity doctrine.").

As a threshold matter, *Spirit's* invocation of the *State's* sovereign immunity is both opportunistic and nonsensical. It is axiomatic that "only the Government can claim sovereign immunity," *Jackson v. Metro. Council HRA Mgmt*, 2011 WL 1486039, at *5 (D. Minn. Mar. 18, 2011), and the State has been adamant throughout this litigation that it would not contend that sovereign immunity blocks precompliance review. Indeed, such an argument is foreclosed. Texas State courts apply sovereign immunity doctrine that is much like *Ex Parte Young*, 209 U.S. 123 (1908), where claims against state officials acting outside the law are generally permitted so long as money damages are not at issue. *Schraer v. Texas Health & Hum. Servs.*, 2014 WL 586036, at *5 (Tex. App.—Corpus Christi--Edinburg, Feb. 13, 2014) (mem. op.) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009)). In line with that general rule, modern Texas procedural doctrine gives Spirit at least two crystal clear pathways to precompliance review: (1) An *ultra vires* suit for injunctive relief; or (2) a petition for protective order under the Texas Rules of Civil Procedure. Under either pathway, an RTE subpoena recipient can litigate all merits arguments that it has a constitutional right to raise.

15

1. **RTE subpoena recipients can bring an *ultra vires* suit to obtain pre-compliance review.**

In Texas "[a] plaintiff who alleges that a state actor is improperly applying the law through ongoing enforcement may . . . bring an *ultra vires* claim against that official." *State v. Zurawski*, 690 S.W.3d 644, 661 n.33 (Tex. 2024); *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 392 (Tex. 2007) (per curiam) ("[A] plaintiff whose constitutional rights have been violated may sue the state for equitable relief."). There is no sovereign immunity bar to such a suit. *Id.* Much like federal courts applying *Ex Parte Young*, Texas courts recognize an "ultra vires exception to sovereign immunity" because "ultra vires acts—or those acts without authority—should not be considered acts of the state at all." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). Thus, "a suit against a state official can proceed even in the absence of a waiver of immunity if the official's actions are ultra vires." *Id.* And the Attorney General put Spirit on notice in its subpoena of this exact pathway to precompliance review. ROA.441.

The district court conceded that at least the *Chesterfield* court conducted review of an "ultra vires" precompliance challenge to an RTE subpoena. ROA.850. Under *Erie*, that should have been the end of the matter. *See Chaney*, 595 F.3d at 229. But the district court contended that, whereas *Chesterfield* presented a question that was "squarely within the ultra vires exception" to the Attorney General's sovereign immunity, here a challenge to the RTE's "*reasonableness*" would not be within that exception. ROA.850 (emphasis added) That nitpicking was wrong because reasonableness review springs from the Fourth Amendment's requirement that a subpoena be "sufficiently limited in scope, relevant in purpose, and specific in directive so that

compliance will not be unreasonably burdensome." *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984). And the *ultra vires* exception permits suits seeking to "require state officials to comply with statutory or constitutional provisions." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Necessarily, the *ultra vires* pathway permits RTE subpeona recipients to litigate whether the subpoena is reasonable. *See also, e.g.*, *Humble Oil*, 259 S.W.2d at 589 (holding the RTE Statute is "not unconstitutional" because it allows "only reasonable" demands).

The district court also deemed the *ultra vires* pathway inadequate because it would be unavailable to attack an "officer's exercise of discretion." ROA.848 (citing *Patel v. Tex. Dep't of Licensing & Reg.*, 469 S.W.3d 69, 76 (Tex. 2015). But discretion is no bar to an *ultra vires* suit when the officer's exercise of that discretion "exceed[] the bounds of [his] authority." *Honors Academy, Inc. v. Texas Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). And when an officer takes action that conflicts with the constitution (such as by issuing an unreasonable subpoena), he exceeds the bounds of his authority. That explains why the Texas Supreme Court permitted an injunctive suit against government officials for allegations they "improperly disclosed information" in violation of constitutional privacy rights. *City of Elsa*, 226 S.W.3d at 391-92. There is no material difference here where, instead of arguing that the Attorney General abused his discretion by improperly *disclosing* information, Spirit would be arguing that the Attorney General abused his discretion by improperly *seeking* information. *See El Paso Indep. Sch. Dist. v. McIntyre*, 584 S.W.3d 185, 198 (Tex. App.—El Paso, 2018, no pet.) (claim that government employees "acted inappropriately by demanding information" could "be addressed by injunctions").

### 2. RTE subpoena recipients can bring an action for protective order to obtain precompliance review.

The Texas Rules of Civil Procedure provide a second pathway to review that is not barred by sovereign immunity. Namely, an RTE subpoena recipient can "move for a protective order . . . before the time specified for compliance." Tex. R. Civ. P. 176.6(e). Under this path, an RTE subpoena recipient can likewise seek merits-based review based on all of the usual reasonableness arguments, including "undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights." Tex. R. Civ. P. 192.6(b). In this respect, the Texas Rules of Civil Procedure are much like the Federal Rules of Civil Procedure. Fed. R. Civ. P. 81(a)(5) ("These rules apply to proceedings to compel testimony or the production of documents through a subpoena issued by [the federal government].").

Multiple cases confirm that this pathway is available to challenge Texas administrative subpoenas before complying with them. In *Alliborne v. Freshour*, the Texas Medical Board issued an administrative subpoena under a section of the Texas Occupations Code that does not textually provide precompliance review. 2017 WL 5663607 (Tex. App.—Austin, Nov. 21, 2017, pet. dism'd) (mem. op.). The subpoena recipient attacked its constitutionality on this exact ground. *Id.* (arguing the statute did not afford "an opportunity for prompt judicial review of the" subpoena). But the State conceded that the Court could conduct "review of the subpoena," including whether the subpoena sought evidence "reasonably related" to the Board's investigation. *Id.* at *2 n.4. And the court rightly conducted that review, because the recipient had brought an action for protective order. *Id.* at *4-5. This Court has adopted

18

*Alliborne* and recognized that "Texas law contemplates the opportunity for precompliance review of an administrative subpoena before a neutral decisionmaker," including specifically for a "protective order." *Cotropia*, 721 F. App'x at 358 nn.2-3.

Again, under the *Erie* doctrine, the existence of *Alliborne* should have doomed Spirit's challenge. *See Chaney*, 595 F.3d at 229. But the district court distinguished this case on the grounds that "[s]overeign immunity was not implicated." ROA.849. It is hard to make sense of that distinction since an action for protective order here would equally not implicate sovereign immunity; the Texas Rules of Civil Procedure provide the exact same remedy either way. The district court, however, concluded that the *Alliborne* scenario was different "because the statute authorizing the Texas Medical Board to issue subpoenas expressly authorizes litigation challenging such subpoenas," ROA.849, whereas the RTE Statute ostensibly does not. But the relevant statute in *Alliborne* authorizes only *the medical board* to initiate litigation about subpoenas—it does not on its face allow subpoena recipients to challenge the subpoenas. Tex. Occ. Code § 153.007(e). In that way, it is just like the RTE Statute, which likewise authorizes government-initiated litigation about subpoenas, Tex. Bus. Orgs. Code § 12.259; *infra* 21, but does not on its face authorize subpoena recipients to initiate challenges.

The district court also faulted the RTE Statute for having no "codified mechanism" within its own text for precompliance review. ROA.839. But no precedent supports this basis for finding the RTE Statute unconstitutional. "[T]he [Supreme] Court has never attempted to prescribe the exact form an opportunity for precompliance review must take"—only that it be available in some way. *Patel*, 576 U.S. at

420-21. Here, precompliance review is available; it makes no difference that the code provisions and Texas doctrines that make it available are not specifically memorialized in the RTE Statute itself. Federal courts for example often review motions to quash brought under generally applicable statutory procedures not expressly linked to the statute that authorized the subpoena. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d 341, 345 (4th Cir. 2000) (entertaining challenge to administrative subpoenas under quashing produce established in Federal Rule of Criminal Procedure 17(c)); *see also Miura Corp. v. Davis*, 2020 WL 5224348, at *6 (C.D. Cal. June 25, 2020) (rejecting *Patel* challenge to COVID-19 Order that was "relatively vague" and did "not clearly state procedures" for review, because government identified generally applicable review pathway would be available)). Nothing in the Fourth Amendment precludes this well-established practice.

## C. An RTE subpoena recipient will always obtain review before penalties are imposed.

In any event, an RTE subpoena recipient is ***guaranteed*** judicial review whenever it decides not to comply with an RTE subpoena, regardless of whether it took advantage of the pathways addressed above. That is because the Attorney General has only two possible remedies for non-compliance, and both guarantee judicial review before a penalty may be imposed. That is dispositive because "precompliance review" definitionally requires review only "prior to suffering penalties." *Patel*, 576 U.S. at 414.

**1.**   The first remedy available to the Attorney General for non-compliance is to seek an injunction compelling compliance. Tex. Bus. Orgs. Code § 12.259. In that

posture, an RTE subpoena recipient enjoys precompliance review because when an agency "files suit to enforce a subpoena, a court can determine whether the subpoena is valid prior to compliance." *Cotropia*, 721 F. App'x at 358 n.3. This form of review suffices because it would "provide[] full opportunity for judicial review before any coercive sanctions may be imposed." *Reisman v. Caplin*, 375 U.S. 440, 450 (1964). So long as this means of defensive review is available, the Supreme Court has held that there is no need for a subpoena recipient to be allowed to attack the subpoena preemptively. *Id.* Instead, "if and when the [agency] move[s] to enforce the subpoenas . . . the recipient would have an adequate remedy at law" at that time in a defensive posture. *Google, Inc. v. Hood*, 822 F.3d 212, 224-25 (5th Cir. 2016). That is why in many federal settings there is actually a "rule strongly disfavoring ***any***" review "of investigative subpoenas" before the agency moves for enforcement. *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334 (10th Cir. 1984) (emphasis added).

**2.**  The second remedy available to the Attorney General is to initiate charter forfeiture proceedings if he deems the refusal to comply to be egregious enough to warrant that exercise of discretion.  *See* Tex. Bus. Orgs. Code § 12.155; *Walker-Texas*, 323 S.W.2d at 606. But before any corporation would "suffer[]" the "penalt[y]," *Patel*, 576 U.S. at 414, of charter revocation, it would have the benefit of full judicial review for all of its reasons for not complying with the RTE subpoena. That is because the Attorney General must initiate all charter revocation proceedings (known as "quo warranto" proceedings) through the courts. *State v. Farmers' Loan & Tr. Co.*, 17 S.W. 60, 64 (Tex. 1891) ("the final inquiry" on charter revocation

"must in all cases be made in and through the courts"). In those suits, "courts will proceed with caution and will declare a forfeiture of the charter or a dissolution of the corporation only in a clear case." *State v. Dyer*, 200 S.W.2d 813, 816 (Tex. 1947). And, when the Attorney General tries to make out a clear case, the corporation is "entitled to all the rights . . . as in cases of trial in civil cases in this State." Tex. R. Civ. P. 781.

This is the exact form of review that took place in *Walker-Texas*, 323 S.W.2d 603. Before the corporation's charter was revoked, it was able to argue "twelve points" defensively, including that the RTE subpoena "was too vague and indefinite," that it "exceed[ed] the authority of the Attorney General," and that it amounted to an "unreasonable seizure[] and search[]" *Id.* at 604. The corporation lost, and had its charter revoked. *Id.* at 607. But it had a full hearing before that penalty fell—it was even able to "cross-examin[e]" the Attorney General as part of its judicial review. *Id.* at 605.

The district court held that this "pre-enforcement review" fails *Patel* because it is "not the same" as "precompliance review." ROA.843. That is a distinction without a difference; *Patel* teaches that both forms of review are the same because review must merely occur before the subpoena recipient "suffer[s] penalties for refusing to comply." *Patel*, 576 U.S. at 414. And, whether pre-enforcement or precompliance, an RTE subpoena recipient will get that review. After all, in either posture, the subpoenaed party can, "before suffering any penalties for refusing to comply," "rais[e] objections in an action in district court." *Lone Steer,* 464 U.S. at 415. Simply put: "If

the subpoenaed party is of the opinion the requests contained in the demand are un-reasonable, he can refuse to comply with the demand and raise the issue as a defense to any action brought by the attorney general . . . to enforce compliance." *State ex rel. Shriver v. Leech*, 612 S.W.2d 454, 459 (Tenn. 1981); *United States v. Morton Salt Co.*, 338 U.S. 632, 654 (1950).

The district court also reasoned that an RTE subpoena recipient is not merely entitled to review before suffering penalties, but also entitled to "review . . . before *deciding* whether to comply." ROA.843 (emphasis added). This passage appears to stand for the proposition that a subpoena recipient should be given one free pass to litigate the validity of the subpoena without suffering any consequences if he loses. But nothing in the Constitution grants subpoena recipients the right to litigate a no-skin-in-the-game challenge. Indeed, it is antithetical to the need for quick resolution of subpoena compliance. Analogously, the courts have long held that it is permissible to subject a recalcitrant witness "to the acid test" before allowing him to appeal an order that forces him to testify. *Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254, 258 (1st Cir. 1989). The acid test requires him to incur a contempt citation for his non-compliance before an appeals court will hear him out. "The witness must decide if his reasons for resisting [testimony] are good enough—and his resolve strong enough" to take this path. *Id.* This "ensures that people raise only those claims that are sufficiently serious that they are willing to make a sacrifice to obtain appellate review." *In re Klein*, 776 F.2d 628, 631 (7th Cir. 1985). That skin-in-the-game approach has the salutary benefit of allowing courts to "minimize the delay of

litigation" that would otherwise occur if witnesses could freely litigate their objections without any downside risk. *Garcia*, 876 F.2d at 258. And it is not unconstitutional.

The possibility of charter revocation just forces RTE subpoena recipients to put skin in the game if they refuse to comply with the subpoena and opt to litigate its validity in a defensive posture. (As noted *supra* 15-20, RTE subpoena recipients can also litigate compliance preemptively without putting skin in the game.) And, for good measure, charter revocation would be rare even in these settings. That is because this rarely used remedy requires a "clear case" of unjustified non-compliance. *Dyer*, 200 S.W.2d at 816. Although there is minimal precedent on RTE non-compliance—and none that defines the boundaries of a "clear case"[3]—a Texas court would likely find that legally flawed objections do not amount to a "clear case" warranting charter revocation so long as the objections were raised in good faith. *Accord Day v. State*, 489 S.W.2d 368, 371 (Tex. App.—Austin, 1972, writ ref'd n.r.e.) (charter revocation where corporation used "subtle and devious artifice" to hide "certain records").

**3.** Spirit may contend that the Attorney General has a third remedy that would prevent adequate precompliance review—namely, criminal prosecution under Tex.

---

[3] Most charter revocation precedent concerns use of this remedy for substantive legal violations. *See, e.g., State v. Mem'l Benevolent Soc'y of Tex.*, 384 S.W.2d 776, 778 (Tex. App.—Austin 1964, writ ref'd n.r.e.) (action to terminate a company's charter for acting as insurance company "without having incorporated in accordance with the insurance laws of the state").

Bus. Orgs. Code § 12.156. But under the current interpretation of the Texas Constitution, the Attorney General has no independent authority to initiate criminal prosecutions—only district attorneys have this power. *State v. Stephens*, 663 S.W.3d 45 (Tex. Crim. App. 2021). For that reason, the Texas Supreme Court has recognized there is "no credible threat of criminal prosecution" from the Attorney General that would even support standing to raise this kind of challenge. *Zurawski*, 690 S.W.3d at 659. Moreover, even before the Texas Constitution was interpreted to limit the Attorney General's prosecutorial power in this way, there was no history of the Attorney General ever using this criminal provision. ROA.385-86 (recounting Attorney General enforcement history). And this penalty is in any event severable—Texas courts seek "to retain valid portions and applications of [a] statute whenever possible." *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 844 (Tex. 1990); *see also infra* 35-36 (discussing severance).

The district court nevertheless concluded that the Attorney General might *arrest* an RTE recipient who refuses to comply, regardless of his inability to prosecute. ROA.843. Although it is true that the Attorney General can commission officers with power to make arrests, Tex. Code Crim. Pro. 14.01(b), there are nevertheless multiple fatal problems with this reasoning. *First*, there is no evidence—and Spirit cited none—that any person had ever been arrested for refusing to comply with an RTE subpoena. *Contra* ROA.385-86 (Attorney General's office declarant explaining that there are no records of this ever happening). That means Spirit lacked standing to make this argument both as-applied and facially because it cannot show that that such an injury is "certainly impending." *Clapper v. Amnesty Intern., USA*, 568 U.S. 398,

409 (2013). It was Spirit's burden "to prove their standing by pointing to specific facts," *id.* at 412 n.4—and here, it has none. Moreover, although it was *not* "the Government's burden to disprove standing by revealing details of its [enforcement] priorities," *id.*, the Attorney General did so anyways to leave no doubt that Spirit has no basis to complain about a potential arrest, ROA.385-86.

*Second*, Spirit must show that "every [action] authorized by the" RTE Statute "violates the Fourth Amendment," *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018)—not merely that this one, highly speculative, potential consequence for non-compliance might someday be applied. Moreover, if an officer ever arrested a corporate employee for failing to produce documents immediately, the employee would have a strong as-applied argument for damages under Section 1983. *See Cotropia v. Chapman*, 978 F.3d 282, 287 (5th Cir. 2020) (state official committed constitutional violation "when she copied documents in [the party's] office without any precompliance review"). That is a corporation's appropriate relief if arrest ever occurs—not an action declaring the entire statute unconstitutional.

### D.  *City of Los Angles v. Patel* **is materially distinguishable.**

All of these circumstances make this case much unlike *City of Los Angeles v. Patel*, 576 U.S. 409 (2015). In that case, Los Angeles authorized its officers to show up at hotels and demand access to documents instantly; hotel operators that did not comply were arrested "on the spot." *Id.* at 421. The City insisted this was the way it had to be—unlike the Attorney General here, Los Angeles did "not even attempt to argue that [its code] affords hotel operators any opportunity whatsoever" for precom-

pliance review. *Id.* at 421. Indeed, the City was adamant that permitting precompliance review would destroy the whole purpose of its law. It said the law "would be worthless" if hotels had time to seek review, because that time would allow hotels to "falsif[y]" their records. Br. for Petitioner, *City of Los Angeles v. Patel*, 2014 WL 7205508, at *41 (City's Supreme Court Opening brief). And the City said "frequent and unannounced spot checks are the only way to catch hotels." Reply Br. for Petitioner, *City of Los Angeles v. Patel*, 2015 WL 737955, at *1 (City's Supreme Court Reply brief). By contrast, here the Attorney General admits (indeed, embraces) the proposition that RTE subpoena recipients may enjoy review before suffering penalties. *Accord Word of Faith World Outreach v. Morales*, 986 F.2d 962, 968-69 (5th Cir. 1993) (Texas Attorney General representations to limit exercise of authority "materially alters or even eliminates the federal constitutional question"); *see also Cruz v. Abbott*, 849 F.3d 594, 601 (5th Cir. 2017) (agency official affidavit about how he would not apply the law "carries some weight").

## II. Spirit Cannot Sustain a Facial Challenge Based on the RTE Statute's Allowance for the Attorney General to Demand "Immediate" Compliance.

Perhaps because it is so plain that Texas law affords RTE subpoena recipients precompliance review, Spirit placed heavy reliance on the RTE Statute's allowance for an "immediate" demand to argue that the statute is unconstitutional. The district court was persuaded that "the RTE Statute's immediacy requirement . . . forecloses" any precompliance review as a practical matter. ROA.844; *see also* ROA.850

(district court reasoning that "[t]he RTE Statute . . . explicitly prevents such opportunity through its temporal requirements."). But this argument was likewise flawed for multiple reasons.

## A. Spirit lacks standing to challenge the RTE statute's "immediate" compliance provision.

First, Spirit has no standing to raise this argument. "It is axiomatic that the judicial power conferred by Art. III may not be exercised unless the plaintiff shows that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant. It is not enough that the conduct of which the plaintiff complains will injure *someone*." *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (quotations omitted). "[A] plaintiff lacks standing to litigate injurious conduct to which he was not subjected." *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 550 (5th Cir. 1988).

Spirit was not subject to a demand for immediate compliance—it was given "three weeks." *See* ROA.842, n.13. For that reason, Spirit lacks standing to challenge this "putatively illegal" aspect of the RTE Statute. *Blum*, 457 U.S. at 999. "Plaintiffs must assert an injury that is the result of a statute's actual or threatened enforcement." *A&R Engineering & Testing, Inc. v. Scott*, 72 F.4th 685, 690 (5th Cir. 2023).

Spirit may claim that it has standing based on its mere receipt of an RTE subpoena. But that is not enough to challenge the "immediate" provision. Spirit's receipt of an RTE subpoena demanding compliance in three weeks has nothing to do with the "putatively illegal conduct," *Blum*, 457 U.S. at 999, that Spirit claims flows

from the statute's grant of authority for the Attorney General to seek "immediate" compliance. In this way, Spirit is in the familiar position of "hav[ing] standing on some issues and not others." *Baca v. Ladd*, 77 F.3d 480 (5th Cir. 1996). Spirit's standing is limited to challenging the RTE subpoena **it received**, and any allegedly-illegal features of the statute that are present in that subpoena. It does not have standing to challenge provisions, such as the "immediate" compliance one, that do not affect it. *See In re Gee*, 941 F.3d 153, 160 (5th Cir. 2019) ("[P]laintiffs must establish standing for each and every provision they challenge."); *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established.").

For good measure, the facts here differ sharply from *Patel*'s. The Court there did not address standing because the parties "stipulated that [the plaintiffs] have been subjected to mandatory record inspections under the ordinance without consent or a warrant." 576 U.S. at 413-14. Indeed, the City admitted at argument that a "plaintiff ha[d] been prosecuted multiple times, or fined . . . for failing to keep the records."[4] Those hotel operators had standing to ensure they were not subject to this treatment again.

---

[4]https://www.supremecourt.gov/oral_arguments/argument_transcripts/2014/13-1175_k4lo.pdf

### B.  Spirit cannot sustain a facial challenge to the RTE statute.

Even if Spirit had standing to attack this feature of the statute (and it does not) its facial challenge would still fail because the Attorney General only rarely demands "immediate" compliance.

1.  "[F]acial challenges [are] hard to win." *Moody v. NetChoice*, 144 S. Ct. 2383, 2397 (2024). It is not enough for Spirit to show that the RTE Statute will sometimes, or even "will often cause Fourth Amendment violations." *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018). Instead, "[t]o sustain such a challenge, [Spirit] must show that no set of circumstances exists under which the statute would be valid." *Nat'l. Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 878 (5th Cir. 2022) (emphasis added). The statute must be unconstitutional "in all of its applications." *Village of Hoffman Ests. v. Flipside, Hoffman Ests.*, 455 U.S. 489, 495 (1982). This heavy burden, coupled with the inherently fact-sensitive nature of Fourth Amendment cases, led many to believe before *Patel* that facial Fourth Amendment challenges were "categorically barred." 576 U.S. at 415. Although we now know they are not, *see id.*, Spirit cannot make the showing necessary to establish facial invalidity.

The statutory grant for the Attorney General to seek "immediate" compliance cannot plausibly show unconstitutionality in all applications because the Attorney General almost always provides subpoena recipients weeks to comply. Recall that the RTE Statute provides that:

> To examine the business of a [corporation] the attorney general shall make a **written request** to a managerial official, who shall **immediately**

> **permit** the attorney general to inspect, examine, and make copies of the records of the entity.

Tex. Bus. Orgs. Code § 12.152 (emphases added). This language grants discretion to the Attorney General on what deadline to give a corporation for production. He can specify a time for compliance in the "written request" he gives the corporation—such as 20 days hence. Once the 20 days runs, the corporation must *then* "immediately" comply. But that would allow ample time for the corporation to obtain judicial review. Granted, in an extreme case, the Attorney General could write a demand for compliance instantly, with compliance textually due "immediately." This might give rise to the scenario the district court feared—where the "temporal" realities would as a practical matter preclude a corporation from affirmatively seeking pre-compliance review. ROA.850. But that is not how the RTE Statute works in almost all cases.

The unrebutted evidence shows that the Attorney General's established practice is to give RTE recipients weeks to comply. A sworn declaration shows that **28 of 29** RTE subpoenas issued between September 2016 and the commencement of this litigation gave "at least ten days for compliance." ROA.385-86. That is powerful evidence of how the RTE Statute works and, at a minimum, should be treated "like any other interpretive aid." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2258 (2024). And it should have precluded the district court from resting its facial invalidity holding on this ground.

The district court asserted that this enforcement history is irrelevant, because "[t]he Attorney General's choice in certain instances *not* to exercise the RTE Statute to its full power cannot defeat a facial challenge to the statute itself." ROA.842. But the opposite is true; the court "**must** explore the laws' full range of applications" in a facial challenge. *Moody*, 144 S. Ct. at 2398 (emphasis added). It cannot pick the worst possible application and then declare the statute facially unconstitutional on that basis. Indeed, "unless these hypothetical faults occur in every case, they do not justify invalidating [the statute] on its face." *Rahimi*, 602 U.S. at 701 n.2.

2.    Moreover**,** a facial unconstitutionality ruling is particularly unwarranted here because of the great violence it does to Texas state sovereignty. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 451 (2008) (warning that facial invalidity holdings "threaten to short circuit the democratic process"). Operating as a corporation in Texas is a privilege, not a right. *Wilson*, 221 U.S. at 383 ("The corporation is a creature of the state."). Texas may impose many "condition[s] of doing business []here." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 133 (2023). One prominent condition it has imposed is that, when corporations register to do business here, they commit to allow the Attorney General to see their books to ensure compliance with "any law of this state" or the corporation's "governing documents." Tex. Bus. Orgs. Code §§ 12.151, 12.153. There is no real dispute that Texas is precluded from imposing this condition. But a facial unconstitutionality holding allows every corporation in Texas to flout it.

3.    Spirit and the district court placed heavy weight on representations the Attorney General made about the statute's "immediate" language in a different, *sui*

*generis* setting known as *Annunciation House, Inc. v. Paxton*, No. 2024DCV0616 (205th D. Ct. El Paso Cnty., Tx.). ROA.836-37, 840, 842, 845 (all citing district court "Dkt. 18-8"—a copy of a filing arising out of that matter). In *Annunciation House*, the Attorney General issued an RTE subpoena that functionally demanded compliance on the spot, ROA.846, giving the opposing party only one day of "grace" when it refused to comply at the time the RTE subpoena was served. ROA.472-73.  In the process, the Attorney General defended the subpoena by explaining that his power to demand "immediate" compliance includes the power to force a corporation to comply "right away." ROA.474. The Attorney General used the RTE Statute in this way in that *sui generis* setting because of particularized, on-the-ground observations demonstrating facts akin to exigent circumstances. *See* ROA.472. Binding precedent confirms "exigent circumstances" could be a valid basis for a subpoena demanding immediate compliance. *Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019).

But the Attorney General's representations in that other case cannot plausibly carry the weight that Spirit and the district court attach to it. All it shows is that the Attorney General **can** demand compliance on the spot—in the district court's words, the "RTE Statute *authorizes* the Attorney General to demand 'immediate[]' access." ROA.841 (emphasis added). It does not *compel* him to do so. And so this power does not show in "all of its applications,"—such as ones where the Attorney General has not demanded on-the-spot compliance—that the RTE Statute is unconstitutional. *Village of Hoffman Ests.*, 455 U.S. at 495.

To save its facial challenge, Spirit was ultimately forced to argue that "nothing in the RTE Statute grants the Attorney General discretionary authority to set the

deadline for responding." ROA.901. In other words, Spirit says that it would be illegal for the Attorney General to give subpoena recipients any time to comply. But this tortured reading gets everything about statutory interpretation wrong. "When legislation and the Constitution brush up against each other, [a court's] task is to seek harmony, not to manufacture conflict." *United States v. Hansen*, 599 U.S. 762, 781 (2023). It is hard to imagine a more manufactured conflict than that the Attorney General *lacks authority* to apply a statute constitutionally.

If a party (unlike Spirit) is subject to a demand for compliance in such a short time that precompliance review is not practically available, it can raise an as-applied challenge specific to the particular facts at issue. *See Cotropia*, 978 F.3d at 287. In that circumstance, the Attorney General would have the ability to argue what fact-specific features—such as exigent circumstances—warranted the demand for such quick compliance. *See Zadeh*, 928 F.3d at 464. The availability of that as-applied setting, and the need for particularized facts to determine the outcome, underscores why Spirit's facial challenge must fail.

## III. A Reasonable Limiting Construction Avoids Any Potential Constitutional Problem.

At a bare minimum, the district court had a duty to adopt a limiting construction, if possible, to solve any constitutional problem it perceived.

**A.** "In evaluating a facial challenge to a state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." *Vill. of Hoffman Ests.*, 455 U.S. at 495 n.5 (1982). The State courts do the same, *see City of Pasadena v. Smith*, 292 S.W.3d 14, 19 (Tex. 2009), because, in Texas,

"[i]n enacting a statute, it is presumed that . . . compliance with the constitutions of this state and the United States is intended." Tex. Gov't Code 311.021(1).[5] The district court's duty to consider a reasonable limiting construction was particularly pronounced here because there is little doubt that Spirit (and corporations generally) can be forced to produce documents to the States they operate in. *Essgee*, 262 U.S. at 155-56 (corporation "must submit its books and papers to duly constituted authority when demand is suitably made"). And courts are particularly loathe to "strik[e] down a statute on its face at the request of one whose own conduct may be" regulated. *New York v. Ferber*, 458 U.S. 747, 769 (1982).

**B.** As discussed, the main flaw the district court identified in the RTE Statute (aside from the erroneous conclusion that precompliance review is unavailable) is its allowance for a demand for "immediate" compliance. But the word "immediate" could easily be excised from the statute entirely. *See Comm'n for Law. Discipline v. Benton*, 980 S.W.2d 425, 442 (Tex. 1998) ("We have limited Rule 3.06(d) so as to render it constitutional by striking [one] term . . . and narrowing [another].").

"Whether unconstitutional provisions of a state statute are severable is of course a matter of state law." *Nat'l Fed. of the Blind of Texas, Inc. v. Abbott*, 647 F.3d 202, 210 (5th Cir. 2011). In Texas, if a statute contains no severability or nonseverability

---

[5] The district court erroneously concluded that the "Texas legislature" must adopt any limiting construction, ROA.850-51, but that was error—the district court, instead, was "duty-bound" to try to adopt such a construction. *Roy v. City of Monroe*, 950 F.3d 245, 252 (5th Cir. 2020). "[E]very reasonable construction must be resorted to [] in order to save a statute from unconstitutionality." *Voting for America, Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013).

provision, then "if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable." Tex. Gov't Code § 311.032(c). So, even if the word "immediately" is unconstitutional, the rest of the RTE statute can easily be given effect without it, so the term is severable.

The resulting statute would look like this:

> To examine the business of a [corporate] entity, the attorney general shall make a written request to a managerial official, who shall ~~immediately~~ permit the attorney general to inspect, examine, and make copies of the records of the entity.

Tex. Bus. Orgs. Code § 12.152. That statute—containing no specific timing requirement—would look much like many other subpoena statutes. After all, "[r]ules and statutes authorizing subpoenas *often* omit a minimum number of days for complying," and leave it to the issuing person to select a number of days that fit the circumstances. *ESI*, 528 F. Supp. 3d at 573 n.3 (emphasis added). Federal Rule of Civil Procedure 45 is one such example. It allows the person issuing the subpoena to require document production "at a specific time and place," with no minimum amount of days required. Fed. R. Civ. P. 45(a)(1)(A)(iii). The federal administrative state is also replete with subpoena statutes that "do[] not indicate how much time a respondent must be allowed before the date for compliance with the administrative subpoena." *Acosta v. American Postal Workers Union*, 2017 WL 6886673, at *4 (C.D. Cal. Dec. 4, 2017). The Federal Trade Commission, for example, "shall at all reasonable times have access to, for the purpose of examination and the right to copy any documentary

evidence of any person." 15 U.S.C. § 49. Courts do not declare these statutes facially unconstitutional.

Indeed, the federal courts have already explained exactly how to construe these statutes so that they operate constitutionally. When a subpoena statute does not itself provide clear timing rules, the courts require compliance "within a *reasonable time*." *In re Grand Jury Proceedings*, 802 F.3d 57, 68 (1st Cir. 2015); *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (requiring administrative subpoenas to "be measured . . . against a flexible standard of reasonableness"). Sometimes the party issuing the subpoena gets aggressive, providing only "one business day" to comply. *Dika-Homewood, LLC v. Off. Max*, 2022 WL 3682214, at *1 (S.D. Fla. June 16, 2022); *Bailey v. Fair & Walker Unit Owners Ass'n*, 2023 WL 2119490, at *2 (N.D. Ga. Jan. 17, 2023) (same). Courts will quash these subpoenas if the time given is not "reasonable." *See, e.g.*, Fed. R. Civ. P. 45(d)(3)(A)(i); *Robertson v. Sw. Bell Tel. Co.*, 403 S.W.2d 459, 470 (Tex. App.—Tyler, 1966) ("[A] party served with a subpoena duces tecum [must] be given a reasonable time within which to comply."). But "[r]easonableness is always a contextual determination." *Tera II, LLC v. Rice Drilling*, 2022 WL 1114943, at *3 (S.D. Ohio Apr. 14, 2022). The statute authorizing the subpoena is not itself invalid.

**C.** Spirit, by contrast, would have this Court apply a much-maligned "canon of constitutional collision." *United States v. Hansen*, 599 U.S. 762, 781 (2023). It is trying to take advantage of certain "odd incentives" in the facial challenge doctrine, *id.*, asking the Court to adopt the most draconian "reading possible" of this statute—even though that draconian form has not been applied to Spirit—in order to escape

a clearly constitutional application of the statute. *See id.* (cautioning courts not to do this). That opportunistic reading is understandable litigation strategy, but it invites this Court to "slay[] a straw man." *Rahimi*, 602 U.S. at 701. This Court should not oblige.

## Conclusion

The Court should reverse the district court's entry of summary judgment for Spirit with instructions to enter summary judgment for the Attorney General.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Ryan S. Baasch
Ryan S. Baasch
Associate Deputy Attorney General
Ryan.Baasch@oag.texas.gov

Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

On December 27, 2024 this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Ryan S. Baasch
RYAN S. BAASCH

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,558 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Ryan S. Baasch
RYAN S. BAASCH