**No. 24-50984**

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

SPIRIT AEROSYSTEMS, INCORPORATED,
*Plaintiff-Appellee*,

*v.*

W. KENNETH PAXTON, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF TEXAS; JANE NELSON, IN HER OFFICIAL
CAPACITY AS SECRETARY OF STATE OF TEXAS,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## BRIEF FOR APPELLEE

DARREN L. MCCARTY
MCCARTY LAW PLLC
1410B West 51st Street
Austin, TX 78756
(512) 827-2902

MATTHEW T. MARTENS
JACLYN N. MOYER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037
(202) 663-6921

LEAH M. FUGERE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 S. Grand Ave., 24th Floor
Los Angeles, CA 90071
(213) 443-5336

February 3, 2025

# CERTIFICATE OF INTERESTED PERSONS

No. 24-50984

SPIRIT AEROSYSTEMS, INCORPORATED,

*Plaintiff-Appellee,*

V.

W. KENNETH PAXTON, IN HIS OFFICIAL CAPACITY
AS ATTORNEY GENERAL OF TEXAS; JANE NELSON, IN HER OFFICIAL
CAPACITY AS SECRETARY OF STATE OF TEXAS,

*Defendants-Appellants,*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Plaintiff-Appellee | Counsel |
|---|---|
| Spirit AeroSystems, Inc. | Matthew T. Martens<br>Jaclyn N. Moyer<br>Leah M. Fugere<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br><br>Darren McCarty<br>MCCARTY LAW PLLC |

| Defendant-Appellant | Counsel |
|---|---|
| W. Kenneth Paxton<br>Attorney General of Texas | Ben Mendelson |

| Co-Defendant | Counsel |
|---|---|
| Jane Nelson<br>    Secretary of State of Texas | |

| Other Interested Parties | Counsel |
|---|---|
| Spirit AeroSystems Holdings, Inc.<br><br>The Boeing Company | |

/s/  Matthew T. Martens
MATTHEW T. MARTENS

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Spirit AeroSystems, Inc. respectfully requests oral argument to the extent that it will aid in the decisional process.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF AUTHORITIES ............................................................................ vii

INTRODUCTION ...............................................................................................1

STATEMENT OF JURISDICTION......................................................................3

STATEMENT OF THE CASE...............................................................................3

     A.    Spirit Is A Delaware Corporation That Manufactures
            Aerostructures in Kansas.........................................................3

     B.    The Texas Request To Examine Statute .............................4

     C.    The Attorney General's Interpretation Of The RTE
            Statute ........................................................................................7

     D.    The Texas Attorney General Seeks To Examine Spirit's
            Records Concerning Out-Of-State Events ...........................9

     E.    The District Court Proceedings...........................................11

SUMMARY OF ARGUMENT ...........................................................................15

ARGUMENT .....................................................................................................16

I.    THE RTE STATUTE IS FACIALLY UNCONSTITUTIONAL UNDER
    THE FOURTH AMENDMENT .................................................................16

     A.    The Fourth Amendment Requires An Opportunity For
            Precompliance Review Of The Reasonableness Of A
            Request to Examine.............................................................17

B.  By Its Terms, The RTE Statute Affords No Opportunity
For Precompliance Review, Much Less Review For
Reasonableness, Of A Request to Examine .......................20

   1.  The RTE Statute Contains No Mechanism For
   Review ...........................................................20

   2.  The RTE Statute's "Immediate[]" Compliance
   Requirement Precludes Review As A Temporal
   Matter ...........................................................21

   3.  The RTE Statute Has No Substantive
   Reasonableness Limitation, Thereby Precluding
   Reasonableness Review By A State Court .................23

C.  The Purported Precompliance Review Mechanisms
Proffered By The Attorney General Are Not Available ...................26

   1.  The Attorney General has not cited a single case in
   which a Texas court has conducted precompliance
   review of the reasonableness of a Request to
   Examine ........................................................26

   2.  Modern Texas procedural doctrine does not allow
   for judicial review ..........................................30

      a.  Sovereign immunity bars an injunctive
      action to challenge the reasonableness of the
      Attorney General's discretionary decision to
      fashion a Request to Examine .......................30

      b.  A petition for a protective order under Rule
      176 is not appliable to a Request to Examine ...............33

   3.  A *quo warranto* proceeding is post-compliance,
   not precompliance, review ......................................35

D.  The Attorney General's Attempts To Distinguish *Patel*
Are Artificial ..........................................................39

II.    SPIRIT CAN CHALLENGE THE FACIAL UNCONSTITUTIONALITY OF
THE RTE STATUTE ......................................................................41

A.    Spirit Has Standing To Challenge the RTE Statute ............41

B.    The RTE Statute Is Unconstitutional In All Its
Applications.........................................................................45

III.   THE ATTORNEY GENERAL'S PROPOSED REVISIONS TO THE RTE
STATUTE ARE FOR THE TEXAS LEGISLATURE TO MAKE, NOT
FEDERAL COURTS ......................................................................49

A.    This Court Cannot Sever The Word "Immediately" From
The RTE Statute To Save Its Constitutionality...................50

B.    The Attorney General Can Still Investigate Corporations
Created By Or Operating Within Texas...............................51

C.    Texas State Sovereignty Is Protected By Allowing The
Texas Legislature To Rewrite Its Statutes ..........................53

CONCLUSION ......................................................................................54

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Adams v. Aircraft Spruce & Specialty Company*, 284 A.3d 600 (Conn. 2022) ...................................................................................................10

*Allibone v. Freshour*, 2017 WL 5663607 (Tex. Ct. App. Nov. 21, 2017) ...................................................................................................35

*Arizona v. Gant*, 556 U.S. 332 (2009) ..............................................18

*BankDirect Capital Finance, LLC v. Plasma Fab, LLC*, 519 S.W.3d 76 (Tex. 2017) .................................................................23

*Brigham City v. Stuart*, 547 U.S. 398 (2006) ...........................................24

*Camara v. Municipal Court of City & County of San Francisco*, 387 U.S. 523 (1967)...................................... 15, 36, 37, 41, 48, 49

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) ....................................31

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ...........................................*passim*

*Chesterfield Finance Company v. Wilson*, 328 S.W.2d 479 (Tex. Civ. App. 1959) ....................................................................24, 28, 29

*Coca-Cola Company v. Harmar Bottling Company*, 218 S.W.3d 671 (Tex. 2006) ...................................................................................10

*Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254 (1st Cir. 1989) ...................................................................................................38

*Cotropia v. Chapman*, 721 F. App'x 354 (5th Cir. 2018) .....................................35

*Cotropia v. Chapman*, 978 F.3d 282 (5th Cir. 2020) ......................................19, 20

*Cruz v. Abbott*, 849 F.3d 594 (5th Cir. 2017) ...........................................44

*EEOC v. Kerrville Bus Company*, 925 F.2d 129 (5th Cir. 1991) .............................3

*El Paso Independent School District v. McIntyre*, 584 S.W.3d 185 (Tex. App. 2018)...................................................................... 32-33

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433 (Tex. 2009) .....................23

*ESI/Employee Solutions, L.P. v. City of Dallas*, 450 F. Supp. 3d 700
    (E.D. Tex. 2020) ...................................................................................17, 21

*Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022).......................44

*Geeslin v. State Farm Lloyds*, 255 S.W.3d 786 (Tex. App. 2008).........................51

*Hale v. Henkel*, 201 U.S. 43 (1906)..........................................................................52

*Hall v. McRaven*, 508 S.W.3d 232 (Tex. 2017)........................................................32

*Houston Belt & Terminal Railway Company v. City of Houston*,
    487 S.W.3d 154 (2016)..............................................................................31, 32

*Humble Oil & Refining Company v. Daniel*, 259 S.W.2d 580
    (Tex. Civ. App. 1953) ...............................................................................*passim*

*In re Klein*, 776 F.2d 628 (7th Cir. 1985) ................................................................38

*Jiao v. Xu*, 28 F.4th 591 (5th Cir. 2022) ....................................................................3

*Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997) ...........................................38, 50

*New York Life Insurance Company v. Head*, 234 U.S. 149 (1914)........................53

*Oklahoma Press Publishing Company v. Walling*, 327 U.S. 186
    (1946)..........................................................................................................29, 30

*Patel v. City of Los Angeles*, 686 F.3d 1085 (9th Cir. 2012)...................................41

*Patel v. Texas Department of Licensing & Regulation*, 469 S.W.3d 69
    (Tex. 2015) ............................................................................................... 31-32

*San Antonio Water System v. Nicholas*, 461 S.W.3d 131 (Tex. 2015)....................31

*See v. City of Seattle*, 387 U.S. 541 (1967)..............................................................18

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996).......................................54

*State Farm Mutual Automobile Insurance Company v. Campbell*,
    538 U.S. 408 (2003)........................................................................................53

*State v. Dyer*, 200 S.W.2d 813 (Tex. 1947)..............................................................37

*State v. Zurawski*, 690 S.W.3d 644 (Tex. 2024) ......................................31

*Super X Drugs of Texas, Inc. v. State*, 505 S.W.2d 333 (Tex. Civ.
    App. 1974) ....................................................................................34

*Texas Natural Resource Conservation Commission v. IT-Davy*,
    74 S.W.3d 849 (Tex. 2002) ...........................................................31

*United States v. Morton Salt Company*, 338 U.S. 632 (1950) ...........17, 18

*US Airways, Inc. v. O'Donnell*, 627 F.3d 1318 (10th Cir. 2010) ............10

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982) ......................................................................45

*Virginia v. American Booksellers Association*, 484 U.S. 383 (1988) ....................54

*Western Union Telegraph Company v. State*, 62 Tex. 630 (1884) ..........51

*Walker-Texas Investment Corporation v. State*, 323 S.W.2d 603
    (Tex. Civ. App. 1959) ...............................................................*passim*

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ......................................................................45

*Williams v. Otis Elevator Company*, 557 F. App'x 299 (5th Cir. 2014) ................25

*Zadeh v. Robinson*, 928 F.3d 457 (5th Cir. 2019) ...................................21

## CONSTITUTIONS, STATUTES, AND RULES

U.S. Const. amend. IV ............................................................................17

28 U.S.C.
    § 1292 .............................................................................................3
    § 2201 .............................................................................................3

Cal. Gov't Code § 72193 .........................................................................39

Cal. Penal Code § 830.1 ..........................................................................39

L.A. Mun. Code § 41.49 ..........................................................................50

22 Tex. Admin. Code § 179.4...................................................................19

Tex. Bus. & Com. Code § 17.61 ........................................................34, 52

Tex. Bus. Orgs. Code
    § 9.001 ...............................................................................4
    § 12.002 ..............................................................................8
    § 12.151 ...................................................................4, 24, 32
    §§ 12.151-12.156 ...............................................................1, 21
    § 12.152 .....................................................................*passim*
    § 12.155 .................................................................6, 21, 47
    § 12.156 .....................................................................6, 47
    § 12.259 ..............................................................................38

Tex. Civ. Prac. & Rem. Code § 66.001 .........................................6, 35

Tex. Code Crim. Proc.
    § 2.12 .......................................................................6, 21
    § 14.01 ......................................................................7, 21

Tex. Gov't Code
    § 311.034 ...............................................................31, 51
    § 422.003 ................................................................5, 34
    § 4007.053 ..........................................................................10

Tex. Labor Code § 21.003 ...............................................................10

Tex. Occ. Code § 153.007 ...............................................................34

Tex. Penal Code § 12.22 ..............................................................6, 20

Tex. R. Civ. P.
    Rule 176.1 ............................................................5, 6, 33
    Rule 176.2 ...........................................................................5
    Rule 176.5 .............................................................5, 33
    Rule 176.6 ..........................................................................33

## OTHER AUTHORITIES

Legislative Reference Library of Texas, https://lrl.texas.gov/sessions/
    sessionyears.cfm (visited Feb. 3, 2025).........................................54

Davis, James E. & Jon L. Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 Tex. Tech. Admin. L.J. 301 (2013)...................................................................................................7, 21

# INTRODUCTION

In *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), the Supreme Court held that the Fourth Amendment requires an opportunity for precompliance review of the reasonableness of an administrative search. Applying this principle, the *Patel* Court declared facially unconstitutional a city ordinance that allowed police officers to inspect hotel records on demand and subjected to criminal prosecution any hotel manager who refused to permit such inspection.

Like the ordinance at issue in *Patel*, Texas's Request to Examine Statute ("RTE Statute"), Tex. Bus. Orgs. Code §§ 12.151-12.156, grants the Attorney General unlimited discretion to, upon request, examine any record of a company registered to do business in the state without an opportunity for precompliance review. A company that fails to comply "shall" have its registration to do business in the state revoked, and the company's officers who refused to permit the examination are subject to criminal prosecution. Pursuant to the RTE Statute, the Attorney General served a "Request to Examine" on Spirit AeroSystems, Inc. ("Spirit"), a company incorporated in Delaware that manufactures aircraft fuselages at its headquarters in Kansas, seeking to examine Spirit's corporate records related to a safety incident that occurred on a flight from Oregon to California. The Request to Examine threatened revocation of Spirit's registration to do business in Dallas if Spirit did not comply. Because Texas law precludes Spirit from obtaining

precompliance judicial review of the reasonableness of the Request to Examine, Spirit brought this action challenging the constitutionality of the RTE Statute. After cross-motions for summary judgment, the district court declared the statute facially unconstitutional under *Patel*.

Three features of the RTE Statute preclude the opportunity for precompliance reasonableness review that the Fourth Amendment requires. ***First***, the RTE Statute commands that a recipient of an examination request "immediately permit" the Attorney General to examine the corporation's records, thus temporally precluding precompliance judicial review. ***Second***, Texas state courts have repeatedly said that the RTE Statute grants the Attorney General "unlimited" and "unrestricted" discretion to examine corporate records, thus precluding those courts from reviewing the reasonableness of a particular Request to Examine. ***Third***, the RTE Statute contains no waiver of the Attorney General's state law sovereign immunity, which strips the state's courts of jurisdiction to review the Attorney General's exercise of discretion in making an examination request. Indeed, just last year the Attorney General asserted that he was immune from a state court injunctive action challenging a Request to Examine. For each of these reasons, individually and in combination, the RTE Statute is facially unconstitutional, and the district court's judgment should be affirmed.

## STATEMENT OF JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over the Attorney General's appeal from the permanent injunctive relief against him, *EEOC v. Kerrville Bus Company*, 925 F.2d 129, 131 (5th Cir. 1991), and under 28 U.S.C. § 2201 over his appeal from the declaratory relief against him, *Jiao v. Xu*, 28 F.4th 591, 596 (5th Cir. 2022).

## STATEMENT OF THE CASE

### A.     Spirit Is A Delaware Corporation That Manufactures Aerostructures in Kansas

Spirit, which is headquartered in Kansas and incorporated in Delaware, is one of the world's largest manufacturers of aerostructures for commercial aircraft. ROA.542-543.  The company's 650-acre campus in Wichita, Kansas includes its corporate offices, 1.9 million square feet of space for the engineering and design group, 8.1 million square feet of manufacturing space, and 2.7 million square feet for warehouses and support functions.  ROA.543.  In Wichita, Spirit manufactures the fuselages used in Boeing 737 airplanes, with fuselage design and delivery taking place in Wichita as well.  ROA.543.

Spirit operates a single facility in Texas near the Dallas Love Field that employs approximately 98 of Spirit's 20,655 employees worldwide.  ROA.543.  The Dallas facility is focused narrowly on providing maintenance, repair, and overhaul services; it is not involved in corporate governance or the production of fuselages.

ROA.543.  Indeed, Spirit has no manufacturing operations in Texas.  ROA.543.  But to operate its repair-and-maintenance facility in Dallas, Spirit is required to and did register as a foreign filing entity under the Texas Business Organizations Code.  *See* Tex. Bus. Orgs. Code § 9.001; ROA.543-544.  The Texas Secretary of State has observed that, for foreign filing entities like Spirit, the law of the entities' state of incorporation (here, Delaware) governs their internal operations and affairs.  ROA.525.

### B.    The Texas Request To Examine Statute

The RTE Statute gives the Attorney General unlimited discretion to, "as [he] considers necessary," demand access to "any record" of any filing entity or foreign filing entity registered in Texas.  Tex. Bus. Orgs. Code § 12.151.  Upon written request from the Attorney General (a "Request to Examine" or "Request"), a filing entity must "immediately permit" the Attorney General to "inspect, examine, and make copies of" its records.  *Id.* § 12.152.  The Attorney General may "make examination of the records of the corporation as often as he may deem necessary immediately after presentation of a letter of request for such examination." *Humble Oil & Refin. Co. v. Daniel*, 259 S.W.2d 580, 589 (Tex. Civ. App. 1953).  In other words, the statute "give[s] to the Attorney General an unlimited and unrestricted right of visitation" and "grant[s] the Attorney General the full and ***unlimited*** and

**unrestricted** right to examination of the corporation's books and records at any time and as often as he may deem necessary." *Id.* (emphasis added).

In his brief to this Court, the Attorney General repeatedly asserts that the RTE Statute authorizes him to issue "subpoenas." But the RTE Statute never uses the word subpoena, *compare* Tex. Gov't Code § 422.003 (authorizing "administrative subpoenas"), and Texas courts have never described the RTE Statute as authorizing subpoenas, instead referring to the Attorney General's authority to issue "a letter of request" under his signature, *Humble Oil*, 259 S.W.2d at 589; *see also Walker-Texas Inv. Corp. v. State*, 323 S.W.2d 603, 605 (Tex. Civ. App. 1959) (discussing what constitutes proper signature of the Attorney General on "the letter of visitation").

In contrast to the RTE Statute, the Texas Rules of Civil Procedure specify the form of a "subpoena," including that it "must be issued in the name of 'The State of Texas' and must" state, among other things, the "cause number" and "the court in which the suit is pending," Tex. R. Civ. P. 176.1, with "[p]roof of service" filed with the court, *id*. 176.5(b). None of those features are present in the Attorney General's Requests to Examine. *See* ROA.440. What is more, the RTE Statute does not authorize the Attorney General to compel the production of documents, as does a subpoena, *id*. 176.2(b) (authorizing subpoena to command recipient to "produce … designated documents"), but rather requires that recipients "immediately permit" him to "examine," "inspect," and "cop[y]" the documents. Tex. Bus. Orgs. Code

§ 12.152.  And while the Texas Rules of Civil Procedure governing subpoenas expressly authorize the issuing party to set "the time … of the action required by the person to whom the subpoena is directed," Tex. R. Civ. P. 176.1(e), the RTE Statute sets the time for compliance with a Request to Examine as "immediately."

Noncompliance with a Request to Examine carries severe penalties.  An entity that "fails or refuses" to immediately permit examination of its records "forfeits the right … to do business" in Texas and the entity's registration "shall be revoked or terminated."  Tex. Bus. Orgs. Code § 12.155.  Texas law empowers the Attorney General to bring "quo warranto proceedings" against any corporation that "does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation."  Tex. Civ. Prac. & Rem. Code § 66.001(4); *see also Walker-Texas*, 323 S.W.2d at 606-607 (affirming revocation of corporate charter where corporation had refused to permit the Attorney General to examine its records).

Furthermore, the RTE Statute provides for criminal penalties.  Any "managerial official or other individual having the authority to manage the [entity's] affairs" who "fails or refuses" to "permit the Attorney General … to examine … a record of the entity" can be convicted of a Class B misdemeanor carrying a sentence of up to 180 days in jail.  Tex. Bus. Orgs. Code § 12.156; Tex. Penal Code § 12.22.  The Attorney General's staff has the legal authority to arrest on the spot those who violate the RTE Statute.  *See* Tex. Code Crim. Proc. § 2.12(22) ("peace officers"

include "[i]nvestigators commissioned by the attorney general"); *id.* § 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view.").

Despite authorizing sweeping intrusions by the Attorney General into corporate records, the RTE Statute provides "no express mechanisms" to allow a company to seek precompliance review of a Request. Davis & Gillum, *Government Pre-Suit Investigative Powers: A Survey of Common Issues Arising from Investigations by the Texas Attorney General and the Texas Department of Insurance*, 14 Tex. Tech. Admin. L.J. 301, 323 (2013). The RTE Statute also lacks any substantive standards governing the reasonableness or breadth of a Request to Examine. *See Humble Oil*, 259 S.W.2d at 589. Indeed, precompliance review is inconsistent with the statutory scheme, which requires that an entity "immediately permit" inspection of its records on pain of severe consequences for failure to do so.

## C.    The Attorney General's Interpretation Of The RTE Statute

On February 7, 2024, the Attorney General served a Request to Examine on Annunciation House, Inc., a non-profit entity organized under Texas law and registered to do business in the state, demanding "immediate access" to certain of the entity's documents. ROA.452. In doing so, the Attorney General cited his "broad" and "expansive" authority under the RTE Statute, ROA.467, and claimed

that his "power to demand access to a corporation's records 'immediately' is …

historically well-established," ROA.475.

According to the Attorney General, the word "immediately" as used in the

RTE Statute means "right away." ROA.474.[1] The language of the RTE Statute is

"clear" in this regard, he argued, and thus must be enforced "as written." ROA.468,

ROA476. He urged that courts must "'refrain from rewriting text that lawmakers

chose'" even if it "'yields unfair results.'" ROA.476. The Attorney General further

characterized any time period he grants a Request recipient to comply "a matter of

grace." ROA.472.

Extending this "grace," the Attorney General permitted Annunciation House

one day to comply with the Request to Examine. ROA.472-473. Annunciation

House filed an action in Texas state court the next day—within the one-day "grace"

period—seeking a declaratory judgment and injunctive relief from the Request to

Examine. ROA.513-519. The Attorney General responded ***not*** by conceding the

availability of judicial review but rather by filing a petition to forfeit Annunciation

House's registration to do business in the state. ROA.459-483. According to the

Attorney General, Annunciation House had violated its statutory obligation to

---

[1] The Attorney General described the 31 days to answer interrogatories under Texas
Business Organizations Code § 12.002(b) as a "sharp contrast" to the "'immediate'
access" required by the RTE Statute. ROA.475-476.

provide "immediate" access to its records. ROA.473-477. The Attorney General further asserted that the state court was without jurisdiction to hear Annunciation House's injunctive action challenging that particular Request to Examine because the Attorney General is immune from suit "in spite of [the] *ultra vires* allegation." ROA.460. In response, the trial court ruled the RTE Statue facially unconstitutional under *Patel* as a "statute[] that fail[s] to provide a process for precompliance review." ROA.681.

### D. The Texas Attorney General Seeks To Examine Spirit's Records Concerning Out-Of-State Events

On January 5, 2024, a Boeing 737 aircraft operated by Alaska Airlines suffered a door plug blowout on a flight from Oregon to California. ROA.544. Around the same time, shareholders of Spirit's parent company, Spirit AeroSystems Holdings, Inc. ("Spirit Holdings"), filed an amended complaint in a federal securities class action in New York, making allegations concerning the company's quality control processes. ROA.422.

On March 28, 2024, the Attorney General announced an investigation of alleged "manufacturing defects" in fuselages that Spirit manufactures for Boeing entirely outside Texas, and "incidents" involving Boeing 737 jets that likewise occurred entirely outside the state. ROA.434. That same day, the Attorney General issued a Request to Examine ("March 28 Request"), erroneously addressed to Spirit Holdings, which is not a Texas foreign filing entity. ROA.425-432. Among other

things, the March 28 Request sought documents, whether in the possession of Spirit Holdings or its subsidiaries, related to Spirit's fuselage manufacturing, diversity initiatives, incentive compensation plan, and disclosures to investors. ROA.431-432.

Notably, the Attorney General has no investigative authority over securities law violations, employment discrimination, or airplane manufacturing defects. The investigation of state securities law violations is assigned to the Texas Securities Board. Tex. Gov't Code § 4007.053. The investigation of employment discrimination is assigned to the State's Labor Commissioner. Tex. Labor Code § 21.003(a)(2). Texas law does not assign the regulation of airline manufacturing to any state government entity or official.[2] And Texas substantive law presumptively applies only to conduct within the state. *Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 682 (Tex. 2006) ("We start with the principle that a statute will not be given extraterritorial effect by implication but only when such intent is clear.").[3]

---

[2] And with good reason, as some courts have held that state laws purporting to regulate aviation safety are preempted by federal law. *E.g.*, *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326-1327 (10th Cir. 2010) ("[F]ederal regulation occupies the field of aviation safety to the exclusion of state regulations.").

[3] The Attorney General lacks personal jurisdiction over Spirit to investigate its out-of-state activities as an out-of-state corporation. *See Adams v. Aircraft Spruce & Specialty Co.*, 284 A.3d 600, 617-619 (Conn. 2022) (holding that court lacked personal jurisdiction over a seller of aircraft parts for claim that part malfunctioned and led to in-state crash).

Nevertheless, the March 28 Request included, in bold print, a "NOTICE" that described the sanctions to which Spirit Holdings was exposed if it did not comply with the Request. Specifically, the Notice stated that a foreign filing entity that "fails or refuses to permit the Attorney General to examine or make copies of a record, without regard to whether the record is located in this state, forfeits the right of the entity to do business in this state, and the entity's registration … shall be revoked." ROA.426. The Request further advised that "a managerial official" of a Request recipient "commits an offense if the official or individual fails or refuses to permit the Attorney General … to examine or to make copies of a record of the entity." ROA.426.

### E.    The District Court Proceedings

After receiving the March 28 Request, counsel for Spirit conferred with counsel for the Attorney General on several occasions to discuss the constitutionality of the RTE Statute. ROA.634. The Attorney General agreed to stay enforcement of the March 28 Request to consider these constitutional arguments. ROA.634. Ultimately, the Attorney General rejected Spirit's constitutional arguments, ROA.421, and Spirit filed the instant action on May 1, 2024, challenging the constitutionality of the RTE Statute both facially and as applied, ROA.10-21. The Attorney General would not agree to stay Spirit's compliance obligation with regard to the March 28 Request through the pendency of this litigation, but rather agreed to

stay it for, at most, ninety days subsequent to the filing of summary judgment motions.  ROA.634.[4]

Nearly two weeks after Spirit filed its complaint, the Attorney General sent a letter to Spirit's counsel "rescind[ing]" the March 28 Request, ROA.436, and simultaneously issuing a new Request to Examine directed to Spirit (the "May 13 Request"), ROA.440-447.  The May 13 Request "instruct[s]" Spirit to "permit" the Attorney General "to examine and make copies of or otherwise produce" certain corporate records and identified the Assistant Attorney General to whom Spirit should "make available the records." ROA.440.  This time, however, the "NOTICE" "encouraged" Spirit "to meet and confer with the Office of the Attorney General if you contend that any of the information sought … is constitutionally protected or otherwise legally exempt from production."  ROA.441.  The Notice further states that if Spirit "cannot reach agreement with the Office of the Attorney General … , you may ***attempt to obtain*** judicial review of the [Request to Examine] before June 3, 2023," through a suit in Texas state court for either a declaratory judgment or injunctive relief.  ROA.441 (emphasis added).  The May 13 Request advised that "the Office of the Attorney General will not dispute the availability of judicial review."  ROA.441.  But even then, the May 13 Request did not represent that the

---

[4] The Attorney General subsequently extended the stay by stipulation through November 4, 2024.  ROA.741.

Attorney General would defer enforcement of the Request through the pendency of judicial review.  *See* ROA.441.  And the May 13 Request reiterated the threat that Spirit's registration to do business in Texas could be revoked for failure to comply with the Request.  ROA.441.

On June 6, 2024, Spirit and the Attorney General cross-moved for summary judgment.  ROA.4-5.  The district judge referred the motions to a magistrate judge, ROA.5-6, who held a hearing on the motions on October 11, 2024, ROA.7.  At the outset of that hearing, the magistrate judge advised that he would rule only on Spirit's facial constitutional challenge and not on its as-applied challenge. ROA.934.  During the oral argument that followed, the Attorney General's counsel conceded that the RTE Statute is "not elegantly written" and "not how a legislature would write a statute like this today."  ROA.947.  So counsel invited the court to "read in[to]" the statute's textual requirement for "immediate[e]" compliance a provision allowing compliance "in a reasonable time."  ROA.952-953.  The magistrate judge rejected the invitation and said the "call" that the statute is unconstitutional is "easy."  ROA.988.

On November 1, 2024, the magistrate judge issued his Report & Recommendation ("R&R") recommending that the RTE Statute be declared facially unconstitutional and the Attorney General be enjoined from using it against Spirit. ROA.852.  As he explained, "Texas's RTE Statute shares the same constitutional

defect as the statute in *Patel*." ROA.836. The RTE Statute "lacks any mechanism that would allow a filing entity to seek precompliance review of the reasonableness of a Request to Examine." ROA.838. Indeed, "[p]recompliance review of the reasonableness of a Request to Examine is itself inconsistent with the directive to 'immediately permit' the Attorney General access; the statute leaves no time for precompliance review on the reasonableness of the request." ROA.838. "Moreover," the magistrate explained, the RTE Statute grants an "'unlimited and unrestricted right of visitation and examination,'" which "precludes the opportunity for a reasonableness review of a Request. ROA.839 (quoting *Humble Oil*, 259 S.W.2d at 589). Without a mechanism for precompliance review of the reasonableness of a Request, "filing entities such as [Spirit] can refuse to answer a Request to Examine only by assuming the risk of arrest, criminal prosecution, and revocation of their business registration. *Patel* makes it clear that the Fourth Amendment prohibits forcing people to make this decision." ROA.839.

In response to the Attorney General's argument that he had not demanded "immediate" compliance here and had instead allowed Spirit three weeks to comply, the magistrate judge noted "that is a 'matter of grace' on the part of the Attorney General" that "is not enshrined in or required by the statute." ROA.842. But "[t]he Fourth Amendment exists precisely so that individuals and entities do not need to rely on the discretionary 'grace' of executive officials to protect their liberties."

- 14 -

ROA.842 (citing *Camara v. Municipal Ct. of City & Cnty. of S.F.*, 387 U.S. 523, 532-533 (1967)). Finally, in response to the Attorney General's argument that an injunctive action could be brought in Texas state court to challenge a Request to Examine, the magistrate judge noted that such an action is unavailable given the Texas state law doctrine of sovereign immunity. ROA.848.

Following issuance of the R&R, the Attorney General filed objections in which he, for the first time, claimed that Spirit lacked standing to bring this facial challenge to the RTE Statute despite having received a Request to Examine issued pursuant to that statute. ROA.853-880. While the district judge was considering those objections, the Attorney General advised Spirit that he would not delay enforcement of the May 13 Request beyond December 16 if the district judge had not ruled by that date. D.Dkt. 62-2 ¶15. By Order dated December 9, 2024, the district judge adopted the R&R, declared the RTE Statute facially unconstitutional, and enjoined the Attorney General from using the statute against Spirit. ROA.909-910, ROA.913-914. This appeal followed. ROA.915.

## SUMMARY OF ARGUMENT

The Attorney General does not dispute that, for the RTE Statute to comport with the Fourth Amendment, recipients of his Requests to Examine must have an opportunity for precompliance judicial review of the reasonableness of a Request. The RTE Statute, however, makes no provision for such review. The text of the

statute requires that a Request recipient "immediately permit" inspection, Texas state appellate court decisions have repeatedly said that the statute confers "unlimited" discretion on the Attorney General to examine corporate records, and the Attorney General argued as recently as last February that he is immune from a state court suit challenging a Request to Examine.  For each of these reasons, individually and in combination, the RTE Statute precludes precompliance judicial review of the reasonableness of any Request to Examine and is thus unconstitutional in all its applications.

## ARGUMENT

### I.  THE RTE STATUTE IS FACIALLY UNCONSTITUTIONAL UNDER THE FOURTH AMENDMENT

The Fourth Amendment requires that a corporation subject to an administrative demand for records be afforded an opportunity for precompliance judicial review to question the reasonableness of that demand.  *City of Los Angeles v. Patel*, 576 U.S. 409, 419-420 (2015).  The RTE Statute, however, grants the Attorney General "unlimited" and "unrestricted" authority to make requests to examine corporate records, in response to which the corporation must "immediately permit" examination at risk of criminal prosecution and corporate dissolution for failure to do so.  The statutory requirement that a Request recipient immediately permit examination of its records precludes judicial review as a temporal matter, and the unlimited scope of the Attorney General's examination authority precludes

review for reasonableness.  Furthermore, the RTE State contains no waiver of the Attorney General's sovereign immunity from suits challenging his exercise of discretion in making an examination request.  Accordingly, the RTE Statute fails to afford the opportunity for precompliance judicial review for reasonableness that the Fourth Amendment requires.

### A.   The Fourth Amendment Requires An Opportunity For Precompliance Review Of The Reasonableness Of A Request to Examine

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  It is well-settled that "[t]he rights secured by the Fourth Amendment extend not only to physical searches, but also include compulsory inspection of documents in a commercial establishment." *ESI/Emp. Sols., L.P. v. City of Dallas*, 450 F. Supp. 3d 700, 724 (E.D. Tex. 2020); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 651-652 (1950) (Fourth Amendment "is not confined literally to searches and seizures as such, but extends as well to the orderly taking under compulsion of process.").

Generally, the Fourth Amendment requires that searches be conducted only pursuant to warrants supported by probable cause. *See Patel*, 576 U.S. at 419.  Thus, the Supreme Court has "repeatedly held that 'searches conducted outside the judicial process, without prior approval by [a] judge or [a] magistrate judge, are *per se*

unreasonable … subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *Arizona v. Gant*, 556 U.S. 332, 338 (2009)).  For instance, the warrant requirement does not apply where the government acts pursuant to "special needs" and "where the primary purpose of the searches is [d]istinguishable from the general interest in crime control." *Id.* at 420 (quotation marks omitted).  In these cases, which involve so-called "administrative search[es]," the government need not obtain a warrant. *See id.*

But "in order for an administrative search to be constitutional, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker." *Patel*, 576 U.S. at 420.  The availability of "judicial review *of the reasonableness* of the demand prior to suffering penalties for refusing to comply" is "constitutionally required in the case of investigative entry upon commercial establishments." *See v. City of Seattle*, 387 U.S. 541, 545 (1967) (emphasis added).  And the same constitutionally protected interests are implicated in the "orderly taking" of documents without physical intrusion on property. *Morton Salt*, 338 U.S. at 651-652.  The opportunity for judicial review for reasonableness is critical to the constitutionality of these administrative searches because it minimizes the "intolerable risk that searches … will exceed statutory limits, or be used as a pretext to harass." *Patel*, 576 U.S. at 421.

In *Patel*, a Los Angeles ordinance "require[d] hotel operators to record information about their guests" and make those records "'available to any officer of the Los Angeles Police Department for inspection.'" 576 U.S. at 412-413.  Failure to do so was "a misdemeanor punishable by up to six months in jail and a $1,000 fine." *Id.* at 413.  On review, the Supreme Court concluded that the Fourth Amendment protected the hotel's right to privacy in its records. *See id.* at 420.  The contemplated inspections were administrative searches, and the Supreme Court concluded that the ordinance was "facially unconstitutional because it penalizes [hotel operators] for declining to turn over their records without affording them any opportunity for precompliance review." *Id.* at 412.

Applying *Patel*, this Court later held that a state regulatory inspection authority was likewise unconstitutional. *See Cotropia v. Chapman*, 978 F.3d 282, 287 (5th Cir. 2020).  In that case, the Texas Administrative Code gave the Texas Medical Board and its representatives "the power … to inspect and copy records of purchases and disposals of drugs" by a medical practice.  22 Tex. Admin. Code § 179.4(d).  Pursuant to that regulation, an investigator from the Texas Medical Board, with an administrative subpoena in hand, examined a medical clinic's records and made copies of certain documents. *Cotropia*, 978 F.3d at 285.  This Court held that the investigator had "violated [the physician's] constitutional rights when she

copied documents in [the clinic's] office without any precompliance review of the administrative subpoena." *Id.* at 287.

### B. By Its Terms, The RTE Statute Affords No Opportunity For Precompliance Review, Much Less Review For Reasonableness, Of A Request to Examine

The RTE Statute provides no opportunity for the precompliance review to question the reasonableness of the Attorney General's Requests to Examine. To the contrary, the text of the RTE Statute, as previously interpreted by both the Attorney General and Texas state courts, precludes such review.

#### 1. The RTE Statute Contains No Mechanism For Review

Like the ordinance at issue in *Patel*, the RTE Statute authorizes the examination of confidential records of lawful businesses without opportunity for judicial review. Indeed, the RTE Statute is essentially identical to the ordinance at issue in *Patel*. The Attorney General, like the LAPD officers in *Patel*, can demand an examination of a business's records, and a recipient of that demand must "immediately permit" the examination. Tex. Bus. Orgs. Code § 12.152. A recipient's refusal to immediately permit examination of the documents can result in a Class B misdemeanor, *see id.*, which carries a "fine not to exceed $2,000" and up to 180 days in jail, Tex. Penal Code § 12.22—penalties virtually identical to those under the city ordinance at issue in *Patel*. And as conceded in his opening brief (at 25), the Attorney General's staff, like a police officer in *Patel*, can arrest on the spot

those who refuse to permit examination of the company's records. Tex. Code Crim. Proc. §§ 2.12(22), 14.01(b). The RTE Statute *also* provides for a severe civil penalty for non-compliance: forfeiture of the right to do business in the state—*i.e.*, the corporate death penalty. Tex. Bus. Orgs. Code § 12.155. Despite such sweeping inspection authority and drastic sanctions facing those who wish to object, the RTE Statute itself makes no provision for precompliance review, s*ee* Tex. Bus. Orgs. Code §§ 12.151-12.156; Davis & Gillum, 14 Tex. Tech. Admin. L.J. at 323, and thus "fail[s] to direct the subject of an administrative [search] to a neutral forum in which it could obtain review," *ESI/Emp. Sols.*, 450 F. Supp. 3d at 727.

### 2. The RTE Statute's "Immediate[]" Compliance Requirement Precludes Review As A Temporal Matter

Not only does the RTE Statute lack an express mechanism for precompliance judicial review, but its structure also precludes such review. The statute requires that a Request recipient "immediately permit" inspection of its records, Tex. Bus. Orgs. Code § 12.152, which necessarily precludes any opportunity for precompliance review. As a simple temporal matter, judicial review of a Request to Examine cannot be obtained before the statutory obligation of "immediate[]" compliance arises. *See Zadeh v. Robinson*, 928 F.3d 457, 464 (5th Cir. 2019) ("demand to turn over … records immediately did not provide an opportunity for precompliance review"). Indeed, the design of immediate compliance is to preclude such review.

- 21 -

The "immediate[]" compliance requirement has been interpreted literally by the Attorney General.  Just last year, assistant attorneys general arrived at the door of a Texas entity with a Request to Examine stating that certain documents were "due immediately upon receipt of this Request to Examine" and requiring the recipient to permit the assistant attorneys general "immediate access for an examination and investigation of all requested materials and to make reproductions or copies of said materials."  ROA.451-452.[5]  When the Request recipient attempted to seek judicial review *the next day*, the Attorney General asserted that he was immune from such a suit, ROA.460, and sought to revoke the corporation's right to operate, arguing that seeking judicial review rather than providing immediate access to documents was a violation of the RTE Statute, ROA.459-482.

In that proceeding, the Attorney General argued that the statutory requirement of "immediate[]" compliance means that a Request recipient must provide access to its documents "right away" and any extension of time—even a single day—to provide access is "a matter of grace."  ROA.472-474.  He further asserted that the

---

[5] Similarly, in *Walker-Texas Investment Corporation v. State*, Assistant Attorneys General arrived at a business with "the letter of visitation" in hand demanding "to make an examination" of corporate records, presented the letter to one of the business's managers, and waited while he read it.  323 S.W.2d 603, 605 (Tex. Civ. App. 1959).  When the manager "refused to permit the Attorney General, through his Assistant Attorneys General, to examine the books and records," the Attorney General sought to revoke the corporation's charter.  *Id.* at 606.

RTE Statute's "statutory grant of power … to demand 'immediate' access plainly means what it says." ROA.475. The Attorney General asked a Texas state court to "enforce the statute 'as written' and 'refrain from rewriting text that lawmakers chose,'" even if that "'yields unfair results,'" because judges must be "'sticklers about not rewriting statutes under the guise of interpreting them.'" ROA.476-477 (quoting *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009) and *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 86 (Tex. 2017)).

Thus, as this same Attorney General has argued within the past year, the RTE Statute as written leaves a Request recipient with the (non-)choice of providing immediate access to the corporation's records or facing an action to revoke its right to do business in the state. By failing to "immediately permit" the Attorney General to inspect or examine records, the statute's command is violated regardless of what retractable, extra-statutory "grace" the Attorney General may afford in pursuing his enforcement remedies. By design, then, the RTE Statute precludes the constitutionally-mandated precompliance judicial review.

### 3. The RTE Statute Has No Substantive Reasonableness Limitation, Thereby Precluding Reasonableness Review By A State Court

Even if the RTE Statute temporally allowed for precompliance review, the statute does not permit judicial review of a Request's reasonableness. The statute confers on the Attorney General discretion to issue Requests to Examine "as [he]

considers necessary." Tex. Bus. Orgs. Code § 12.151. Texas courts have interpreted the RTE Statute as affording the Attorney General "the full and unlimited and unrestricted right to examination of the corporation's books and records at any time and as often as he may deem necessary." *Humble Oil & Refin. Co. v. Daniels*, 259 S.W.2d 580, 589 (Tex. Civ. App. 1953); *see also Chesterfield Fin. Co. v. Wilson*, 328 S.W.2d 479, 481 (Tex. Civ. App. 1959); *Walker-Texas Inv. Corp. v. State*, 323 S.W.2d 603, 606 (Tex. Civ. App. 1959). It should come as no surprise, then, that the Attorney General has not cited a single case in which a Texas state court conducted a reasonableness review of an examination pursuant to the RTE Statute.[6]

The Attorney General's discretionary power under the RTE Statute, unbounded by any reasonableness limitation—which is the touchstone of the Fourth Amendment, *see Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)—creates the very risk of harassment about which the Supreme Court expressed concern in *Patel*. *See* 576 U.S. at 421. And because the RTE Statute does not impose a reasonableness limitation on the Attorney General's discretion to examine corporate records, there

---

[6] The Attorney General suggests (Br.17), in a parenthetical, that *Humble Oil* holds that Requests to Examine are subject to a reasonableness restriction. That decision said precisely the opposite. The court explained that, while there is "a limitation upon the Attorney General's authority *to make copies*," the Attorney General has a "full and unlimited and unrestricted right *to examination* of corporate records." 259 S.W.2d at 589 (emphasis added). The court concluded that, notwithstanding the Attorney General's unlimited authority to examine records, the limitation on his authority to copy was sufficient to render the statute constitutional. *Id.*

is no reasonableness standard for a state court to apply even if judicial review of a Request to Examine were possible. *See Humble Oil*, 259 S.W.2d at 589. As the district court put it, "[g]iving the Attorney General an 'unlimited' right to visit a business and examine its records means … there is no metric for what is reasonable under the statute." ROA.839.

The Attorney General wholly ignores this point in his brief (and therefore waived any challenge to it[7]), failing to offer even a sentence of explanation for how the RTE Statute could be read both to grant the Attorney General an "unlimited and unrestricted right to examination" and to grant courts the right to review the reasonableness of Requests to Examine. Nor is there such an explanation. If the RTE Statute grants unrestricted examination authority as Texas state courts have repeatedly said, then the statute cannot logically be read to allow judicial review for reasonableness. The former necessarily precludes the latter.

Thus, even if the RTE Statute allowed for precompliance review as a temporal matter—and it does not—the absence of any statutory restriction on the Attorney General's discretion in crafting Requests to Examine precludes the possibility of judicial review for reasonableness. Accordingly, the RTE Statute offends the Fourth

---

[7] *Williams v. Otis Elevator Co.*, 557 F. App'x 299, 303 (5th Cir. 2014) (per curiam) ("Where an appellant challenges only one of the district court's alternative holdings, the argument that the other alternative holding was in error is waived.").

Amendment as interpreted in *Patel*, both because the statute forecloses precompliance review temporally and because it precludes reasonableness review for lack of a reasonableness limitation.

### C.    The Purported Precompliance Review Mechanisms Proffered By The Attorney General Are Not Available

Skipping past these flaws in the RTE Statute's text and structure, the Attorney General opens by arguing at length that procedural mechanisms exist under Texas law to obtain judicial review of Requests to Examine.  Br.14-20.  Ultimately, whether such procedural mechanisms exist is irrelevant for the two reasons discussed above: the immediate compliance requirement precludes precompliance review as a temporal matter, and the unlimited discretion granted to the Attorney General by the RTE Statute forecloses courts from reviewing examination requests for reasonableness.  But in fact, the procedural mechanisms the Attorney General invokes are not legally viable means to obtain judicial review.

### 1.    The Attorney General has not cited a single case in which a Texas court has conducted precompliance review of the reasonableness of a Request to Examine

The Attorney General first claims that "[t]here is abundant Texas appeals court precedent conducting merits review of RTE[s]."  Br.12.  This careful phrasing obscures whether the judicial review in that precedent was either precompliance or of the reasonableness of a Request to Examine—both of which are required by the Fourth Amendment.  In fact, it was neither.

The Attorney General begins by citing *Humble Oil*. Br.12. In that case, the Attorney General intervened in a lawsuit between Humble Oil and Montgomery County over tax assessments. 259 S.W.2d at 581. After intervening, the Attorney General served a "letter of visitation" under the RTE Statute on the General Counsel of Humble Oil. *Id.* at 582. When the General Counsel "demurred to this demand" to inspect the company's records, the First Assistant Attorney General advised that the Attorney General would file a *quo warranto* proceeding against Humble Oil to forfeit its corporate charter. *Id.* at 582-583. The General Counsel then "permitted" the examination "under protest" and reserved the right to resist use of the examined documents in litigation. *Id.* at 583. Thereafter, Humble Oil filed a petition as an ancillary proceeding in the pending litigation to obtain return of the copies of Humble Oil's corporate records made by the Attorney General. *Id.* The Texas appellate court ordered return of the copies, holding that, while the RTE Statute gave the Attorney General "unlimited" and "unrestricted right to examination of" corporate documents, it placed a legal "limitation upon the Attorney General's authority to make copies." *Id.* at 589. The court further rejected the argument that the Texas Constitution limits the Attorney General's discretion to examine (as opposed to copy) records pursuant to the RTE Statute. *Id.* In other words, "the Attorney General was acting within the scope of his lawful powers in making demand for inspection and making inspection," but "the Attorney Geneal was acting

beyond the scope of his lawful powers in taking copies." *Id.* at 591.  Accordingly, the court ordered return of those copies to Humble Oil.  *Id.*

The *Humble Oil* decision, then, rather than supporting the Attorney General's claim that the RTE Statute allows for precompliance review of the reasonableness of an examination request, in fact, directly refutes it.  The General Counsel there had to allow examination of the records under protest and, only after examination and copying had occurred, brought an action to obtain return of the copies.  This is obviously not ***pre***compliance review.  And even in ***post***-compliance review, the court expressly declined to read the RTE Statute (or Texas Constitution) as placing any reasonableness limitation on the Attorney General's examination authority, instead reading the statute as limiting only his authority to make copies.  Far from assisting the Attorney General's defense of the RTE Statute, the *Humble Oil* decision highlights the statute's constitutional infirmity.

The Attorney General next invokes the Texas appellate court decision in *Chesterfield*.  Br.13.  But like *Humble Oil*, *Chesterfield* involved a dispute over the Attorney General's legal authority to make copies, not over the reasonableness of a particular demand by the Attorney General to examine a corporation's records.  The court reaffirmed that the Attorney General has "the unrestricted and unlimited right to examine and inspect" corporate records and made clear that "[t]he only question presented is whether or not he has the right to copy appellant's records."  328 S.W.2d

at 481. Even then, the court did not review the reasonableness of any copying, but rather only whether copying was statutorily authorized. *See id.* Thus, the *Chesterfield* decision does not support—and, indeed, undermines—the Attorney General's claim that Texas state courts can conduct precompliance review of the reasonableness of a demand by the Attorney General to examine corporate records.

Finally, the Attorney General claims that in *Walker-Texas* a state appellate court "conducted review of a corporation's reasons for refusing to produce records." Br.13. That case was a *quo warranto* proceeding brought to revoke a corporation's charter **after** the company refused to comply with a Request to Examine, *see* 323 S.W.2d at 604-606, and thus is the antithesis of precompliance review. What is more, the court of appeals affirmed the trial court's exclusion as "not relevant" of evidence "bearing on whether or not the search was unreasonable." *Id.* at 607. Thus, the decision refutes the notion that, even in a post-compliance proceeding in which sanctions are sought, review of a Request to Examine's reasonableness is available.[8]

---

[8]    The Attorney General also notes that "all of these cases rejected Fourth Amendment challenges to the RTE Statute." Br.14. But those cases predated the decision in *Patel* by more than 60 years and nowhere evaluated whether the RTE Statute afforded an opportunity for precompliance review for reasonableness. The Attorney General asks this Court to infer that such an analysis was nonetheless conducted because, in his telling, the U.S. Supreme Court had by the 1950s "amply explained that 'provisions for judicial review' are necessary in administrative subpoenas." Br.14 (quoting *Oklahoma Press Publ'g Co. v. Walling*, 327 U.S. 186, 212 (1946)). This invitation to speculation is frivolous. The portion of the *Oklahoma Press* opinion cited by the Attorney General expressly states that it "did not involve a *subpoena*" but rather judicial review of a state administrative agency

### 2.    Modern Texas procedural doctrine does not allow for judicial review

The Attorney General next resorts to arguing that regardless of what the three cited cases hold, two "modern" Texas procedural mechanisms exist to obtain precompliance review: an *ultra vires* injunctive action and a Rule 176 petition for a protective order.[9]   Br.14-15.   But neither enables the constitutionally required judicial review.

#### a.    Sovereign immunity bars an injunctive action to challenge the reasonableness of the Attorney General's discretionary decision to fashion a Request to Examine

The Attorney General first argues that a Request recipient could bring an "*ultra vires* suit for injunctive relief."   Br.15.   This is incorrect, as the Attorney General himself has elsewhere acknowledged.   Just last February, the Attorney General argued that he was immune from an injunctive action challenging a Request to Examine notwithstanding the *ultra vires* exception.   ROA.460.[10]

---

hearing of labor complaint.   327 U.S. at 211-212.   The *Oklahoma Press* opinion nowhere explained, much less "amply explained," that precompliance review of an administrative subpoena was required for Fourth Amendment purposes.

[9] The May 13 Request suggested that Spirit seek judicial review through either a declaratory judgment action or a suit for injunctive relief.   ROA.441.   During the district court proceedings, Spirit noted that the state's Declaratory Judgment Act ("DJA") does not waive sovereign immunity for suits of that sort.   ROA.669.   The Attorney General has now abandoned any argument that the DJA provides a means to obtain review of the reasonableness of a Request to Examine.

[10] The Attorney General attacks as "opportunistic and nonsensical" Spirit's invocation of sovereign immunity as barring judicial review of a Request to

Under the Texas state law "doctrine of sovereign immunity, the State and its officers are shielded from judicial scrutiny unless the State consents to suit." *State v. Zurawski*, 690 S.W.3d 644, 660 (Tex. 2024).  The Attorney General cannot waive that sovereign immunity.  "Sovereign immunity can be waived only by statute," *San Antonio Water System v. Nicholas*, 461 S.W.3d 131, 139 (Tex. 2015), because "it is the Legislature's sole province to waive or abrogate sovereign immunity," *Texas Natural Resources Conservation Commission v. IT-Davy*, 74 S.W.3d 849, 857 (Tex. 2002), and the Legislature has vigorously guarded its control over sovereign immunity and its waiver, *see* Tex. Gov't Code § 311.034 ("[A] statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").  The RTE Statute contains no such waiver.

In the absence of a statutory waiver, there is a narrow exception to sovereign immunity for an *ultra vires* suit.  *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009); *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (2016) (referring to "the narrow *ultra vires* principles").  "But, to fall within this 'ultra vires exception,' a suit must allege that a state official acted without legal authority or failed to perform a purely ministerial act, ***rather than attack the official's exercise of discretion***."  *Patel v. Texas Dep't of Licensing & Reg.*, 469

---

Examine.  Br.15.  But it was the Attorney General who first invoked sovereign immunity in response to an attempt to obtain such review.  ROA.460.

S.W.3d 69, 76 (Tex. 2015) (emphasis added).  In other words, "sovereign immunity bars suits complaining of an exercise of *absolute* discretion," *Hall v. McRaven*, 508 S.W.3d 232, 241 (Tex. 2017) (quotation marks omitted), and "exercises of absolute discretion are absolutely protected," *Houston Belt*, 487 S.W.3d at 164.

The RTE Statute grants the Attorney General absolute discretion to examine corporate records by means of Requests to Examine.  The statute empowers the Attorney General to inspect documents "as [he] considers necessary," Tex. Bus. Orgs. Code § 12.151, which Texas state courts have said gives the Attorney General an "***unlimited*** and ***unrestricted*** right to examination of the corporation's books and records at any time and as often as he may deem necessary," *Humble Oil*, 259 S.W.2d at 589 (emphasis added).[11]  Accordingly, an exercise by the Attorney General of his absolute discretion to examine corporate records pursuant to the RTE Statute is absolutely protected from judicial scrutiny under Texas's sovereign immunity doctrine.  *See Houston Belt*, 487 S.W.3d at 164 ("exercises of absolute discretion are absolutely protected").  The Attorney General's contention that Request recipients can nonetheless challenge through an *ultra vires* suit the reasonableness of his exercise of discretion is frivolous.  *See El Paso Indep. Sch.*

---

[11] The *Humble Oil* court likewise rejected the argument that the Texas Constitution limits the Attorney General's discretion to examine records pursuant to the RTE Statute.  *See* 259 S.W.2d at 589.

*Dist. v. McIntyre*, 584 S.W.3d 185, 198-199 (Tex. App. 2018) (holding that action seeking to enjoin government actors from seeking documentation regarding parents' homeschooling activities was not subject to the *ultra vires* exception because the action was not challenging the constitutionality of a statute but rather its discretionary application by the state official).

> **b.** **A petition for a protective order under Rule 176 is not appliable to a Request to Examine**

The Attorney General also contends that Texas Rule of Civil Procedure 176 provides a "pathway to review." Br.18. This argument, too, is meritless. Rule 176 addresses "subpoenas," which "must be issued in the name of 'The State of Texas' and must" state, among other things, the "cause number" and "the court in which the suit is pending." Tex. R. Civ. P. 176.1. Once the subpoena is served, "[p]roof of service" must be filed with the court, *id*. 176.5(b), and a person served with such a subpoena "may move for a protective order," *id*. 176.6(e).

These provisions have no application here. A Request to Examine issued pursuant to the RTE Statute, including the May 13 Request issued to Spirit, has none of the characteristics specified in Rule 176. The Request to Examine does not, on its face, purport to be a subpoena, does not cite Rule 176 for its authority, does not state that it was issued in the name of "The State of Texas," does not include a case number or identify a court in which a suit is pending, and was not followed by the filing of a proof of service. ROA.440. And the May 13 Request made no reference

to Rule 176 as a means to obtain judicial review. *See* ROA.441 (referencing declaratory judgment or injunctive action).

The Attorney General's effort to rewrite the RTE Statute as authorizing administrative subpoenas within the scope of Rule 176 is unavailing. When the Texas legislature intended to authorize administrative subpoenas, it knew how to do so. *See*, *e.g.*, Tex. Gov't Code § 422.003(a) (providing for the issuance of "administrative subpoenas" to investigate Internet-based crimes against children); *id.* § 422.003(b) (providing for an "administrative subpoena that requires the production of records"); Tex. Occ. Code § 153.007(a) (permitting the Texas Medical Board to issue a "subpoena" or "subpoena duces tecum"). Moreover, subpoenas typically call for the "production" of records. *See*, *e.g.*, Tex. Gov't Code § 422.003(b); Tex. Bus. & Com. Code § 17.61(a). By contrast, the RTE Statute makes no reference to a party's "production" of its documents and instead describes the Attorney General's invasive power to "inspect," "examine," and "make copies" of corporate records. Tex. Bus. Orgs. Code § 12.152; *see also* ROA.440. Thus, Texas courts have repeatedly referred to the RTE Statute as a "visitorial statute" pursuant to which the Attorney General can issue a "letter of visitation" that gives him "access to the corporate books and records." *Humble Oil*, 259 S.W.2d at 585, 589; *see also Super X Drugs of Tex., Inc. v. State*, 505 S.W.2d 333, 337 (Tex. Civ. App. 1974).

Not surprisingly, then, the Attorney General is unable to cite a single case applying Rule 176 to review Requests to Examine, or even a single case that refers to a Request to Examine as a "subpoena." *See* Br.18-19. Instead, he cites two unpublished cases applying Rule 176 to administrative subpoenas issued by the Texas Medical Board. *See Allibone v. Freshour*, 2017 WL 5663607, at *2 (Tex. Ct. App. Nov. 21, 2017); *Cotropia v. Chapman*, 721 F. App'x 354, 358 nn.2-3 (5th Cir. 2018) (per curiam). Even then, neither of those cases held that Rule 176 was a proper mechanism for challenging an administrative subpoena. Those unpublished decisions simply assumed, without deciding, that Rule 176 could be used to review what was plainly an "administrative subpoena" issued by the Texas Medical Board—*see Cotropia*, 721 F. App'x at 358 n.2; *Allibone*, 2017 WL 5663607, at *4— not a Request to Examine issued by the Attorney General.

### 3.    A *quo warranto* proceeding is post-compliance, not precompliance, review

Finally, the Attorney General contends that a *quo warranto* proceeding to revoke a corporation's charter after it fails to comply with a Request to Examine constitutes precompliance review. Br.20. This argument badly misreads *Patel*.

Texas law empowers the Attorney General to bring "quo warranto proceedings" against a corporation that "does or omits an act that requires a surrender or causes a forfeiture of its rights and privileges as a corporation." Tex. Civ. Prac. & Rem. Code § 66.001(4). In other words, a *quo warranto* proceeding is

initiated only *after* a corporation ***fails to comply*** with a Request to Examine. *See Walker-Texas*, 323 S.W.2d at 606. The Attorney General asserts that a *quo warranto* proceeding nonetheless satisfies the Fourth Amendment because it "guarantee[s] judicial review before a penalty may be imposed." Br.20. But the Fourth Amendment requires pre***compliance*** review, not merely pre-***enforcement*** review. As the Supreme Court explained, "'safeguards [that] may only be invoked at the risk of a … penalty'" do not satisfy the Fourth Amendment's precompliance review requirement. *Patel*, 576 U.S. at 421 (quoting *Camara*, 387 U.S. at 533).

The hotel operators in *Patel* were entitled to a criminal trial before jail time or fines were imposed. But that did not save the city ordinance from unconstitutionality. The Supreme Court held that the hotel operators were entitled to an opportunity for judicial review before compliance was due and before they even "***face[d]*** penalties for failing to comply." *Patel*, 576 U.S. at 421 (emphasis added). An inspection regime under which one "can only refuse to comply with an officer's demand to turn over the [documents] at his or her own peril" does not pass constitutional muster. *Id.* Thus, a *quo warranto* proceeding, which is initiated after a Request recipient has been put to the choice of compliance or facing sanction for failure to comply, does not satisfy *Patel*'s requirement of an opportunity for precompliance review. *See id.* ("business owners cannot reasonably be put to this kind of choice").

To make matters worse, a *quo warranto* proceeding does not allow for challenges to the reasonableness of a Request to Examine. A Texas appellate court long ago rejected the notion that the reasonableness of a Request to Examine is a defense to—or even properly raised in—a *quo warranto* revocation proceeding. *See Walker-Texas*, 323 S.W.2d at 606-607 (holding that, in a *quo warranto* proceeding, the trial court properly excluded evidence "bearing on whether or not the search was unreasonable and unconstitutional").[12]

The Attorney General contends that under "the acid test," a Request recipient is not entitled to risk-free judicial review of an inspection request. Br.23. This argument cannot be squared with *Patel*, which held that the Fourth Amendment does not allow an arrangement where a business operator "can only refuse to comply with an officer's demand … at his or her own peril." 576 U.S. at 421; *see also id.* (inspection regime was unconstitutional because "'safeguards may only be invoked at the risk of a criminal penalty'" (quoting *Camara*, 387 U.S. at 533)). The "acid test" is inapposite, as it applies to the right to appeal a judge's decision rather than the right to obtain judicial review by a trial court in the first instance. *See*

---

[12] The Attorney General cites *State v. Dyer*, 200 S.W.2d 813 (Tex. 1947), for the proposition that courts will only revoke a corporation's charter in a "clear case." Br.22, 24. But that case, which did not involve a Request to Examine, places no limits on the RTE Statute's command that a corporation's registration to do business "shall" be revoked for failure to comply with a Request.

*Corporacion Insular de Seguros v. Garcia*, 876 F.2d 254, 257 (1st Cir. 1989) (holding that those "who wish to appeal a discovery order must first defy it and be held in contempt"); *In re Klein*, 776 F.2d 628, 630 (7th Cir. 1985) (holding that for purposes of federal appellate jurisdiction, "[a] final decision in a subpoena case means an order holding a witness in contempt").

The Attorney General alternatively argues that judicial review of a Request to Examine is available if the Attorney General seeks an injunction compelling compliance with a Request.  Br.20 (citing Tex. Bus. Orgs. Code § 12.259).  As an initial matter, the Attorney General never advanced this argument below, and thus he cannot raise it for the first time on appeal.  *See Johnson v. Sawyer*, 120 F.3d 1307, 1316 (5th Cir. 1997) ("[O]n appeal, we will not consider a new ground in opposition to, or in defense of, summary judgment.").  In any event, the fact that the Attorney General can bring an action compelling compliance by a Request recipient does not negate the risks of registration revocation and criminal prosecution that attach to non-compliance immediately, and thus does nothing to resolve the constitutionally impermissible dilemma a Request recipient faces when confronted in the field with the Attorney General's inspection demand—namely, the "choice" of turning over confidential records or "refus[ing] to comply … at his or her own peril."  *Patel*, 576 U.S. at 421.

The Attorney General responds there is no peril of criminal prosecution given his lack of "independent authority to initiate criminal prosecution—only district attorneys have this power."  Br.24-25.  But the police officers in *Patel* likewise lacked any independent authority to initiate prosecutions, which power resided instead in the district attorney's office.  *See* Cal. Penal Code § 830.1 ("peace officers," including the Los Angeles Police Department, do not have power to determine charges or prosecute crimes); Cal. Gov't Code § 72193 (city prosecutors, which includes the Los Angeles City Attorney, have the power to prosecute all misdemeanors).  It was the threat of criminal penalties, not the body that would prosecute the offense, that created the unconstitutional choice in *Patel*, 576 U.S. at 421, and does so here as well.  The Attorney General's claim that Spirit faces "no credible threat of criminal prosecution" or arrest (Br.25) is meritless given that the March 28 Request expressly threatened criminal prosecution.  ROA426.  And, in any event, Spirit faces a very real threat—repeated as recently as December 5, *see* D.Dkt. 62-2 ¶15—of revocation of its business registration for failure to comply with the Request.  Thus, like the hotel owners in *Patel*, Request recipients lack an opportunity for precompliance judicial review for reasonableness because they face the very dilemma (comply or refuse at your peril) that the Fourth Amendment forbids.

### D.     The Attorney General's Attempts To Distinguish *Patel* Are Artificial

The Attorney General attempts to distinguish *Patel* in several respects, none of which are convincing.  ***First***, he argues that "unlike" here, the Los Angeles ordinance at issue in *Patel* "authorized [the city's] officers to show up at hotels and demand access to documents instantly; hotel operators that did not comply were arrested 'on the spot.'"  Br.26.[13]     But that is precisely what the RTE Statute authorizes the Attorney General to do.  *See supra* note 5.  The Attorney General's contention that he "admits (indeed, embraces)" the opportunity for precompliance review (Br.27) obscures that fact his first mention of such review was nearly two weeks after Spirit filed this action.  ROA.441.  Just weeks before the Attorney General served the Request to Examine on Spirit, he was arguing in Texas state court that he was immune from judicial review.  ROA.460.  ***Second***, the Attorney General claims that this case "differ[s] sharply" from *Patel* because in that case "the plaintiffs ha[d] been subjected to mandatory record inspections under the ordinance without consent or a warrant."  Br.29 (cleaned up).  But Spirit has been the subject of a Request to Examine its corporate records without a warrant or consent,  as have more than two dozen other entities.  ROA.385.  ***Finally***, the Attorney General claims that

---

[13] *Patel* did not state that hotel operators "were" arrested on the spot, only that they "can be" under the ordinance.  576 U.S. at 421.  So too here.  Br.25 (Attorney General conceding that he has authority to arrest for refusal to comply with Request).

this case "differ[s]" from *Patel* because the plaintiff there had been prosecuted "for failing to keep the records." Br.29. This is misdirection. The ordinance in *Patel* required that hotels both keep records and make them available for inspection. No one challenged the constitutionality of the recordkeeping requirement. At issue was the inspection authority, and there was no evidence in *Patel* that anyone had ever been criminally prosecuted for failure to permit an inspection. *See Patel v. City of L.A.*, 686 F.3d 1085, 1086 (9th Cir. 2012). Nevertheless, the Court sustained a facial challenge because the ordinance created "'the risk of a criminal penalty.'" *Patel*, 576 U.S. at 421 (quoting *Camara*, 387 U.S. at 533).

## II. SPIRIT CAN CHALLENGE THE FACIAL UNCONSTITUTIONALITY OF THE RTE STATUTE

Cornered, the Attorney General attempts to argue that Spirit's facial challenge is deficient because he sometimes—but not always—applies the RTE Statute other than how it is written. Thus, he argues that Spirit lacks standing and, in any event, cannot demonstrate that the RTE Statute is unconstitutional in all its applications, as a facial challenge requires. Both arguments are incorrect.

### A. Spirit Has Standing To Challenge the RTE Statute

The Attorney General argues that Spirit lacks standing to challenge the constitutionality of the RTE Statute's "immediately permit" requirement because, regardless of whether the immediately permit requirement might "injure *someone*," "Spirit was not subject to a demand for immediate compliance—it was given 'three

weeks.'"  Br.28.  This argument both misrepresents Spirit's facial challenge and misconstrues the language of the RTE Statute.

As an initial matter, Spirit has not challenged the "immediately permit" language in isolation.  Spirit's facial challenge rests on the notion that three features of the RTE Statute, individually and in combination, preclude precompliance reasonableness review of a Request to Examine.  Thus, even were the Attorney General correct that the RTE Statute's "immediately permit" requirement does not apply to Spirit, it would not save the statute, both because the RTE Statute does not waive the Attorney General's sovereign immunity from suit to obtain reasonableness review, *supra* at 30-33, and because the Texas courts have interpreted the RTE Statute as lacking a reasonableness limitation they can apply, *supra* at 23-29.  The Attorney General does not argue that Spirit lacks standing to challenge either of those two features of the RTE Statute.

Spirit also has standing to challenge the statute's "immediately permit" requirement.  The May 13 Request ordered Spirit to "permit" the Attorney General "to examine and make copies of" its records.  ROA.440.  Regardless of what else the Attorney General writes in his Requests, the RTE Statute expressly sets the time when, after service of a Request, the recipient must permit inspection: "immediately."  Tex. Bus. Orgs. Code § 12.152.  Spirit, like every Request recipient, is subject to that statutory compliance deadline.  Indeed, this was the interpretation

of the RTE Statute the Attorney General advanced in court as recently as **February 2024**, when he stated: "Upon receiving a written request for documents and information, a registered entity 'shall **immediately** permit the attorney general to inspect, examine, and make copies of [its] records.'"  ROA.468 (quoting Tex. Bus. Orgs. Code § 12.152) (emphasis in original); *see also* ROA.475-476.  In other words, up until weeks before Spirit filed this action, the Attorney General's position, as stated in court filings, was that the statutory requirement to "immediately permit" inspection was triggered "[u]pon receiving a written request."  Any relief from that immediate obligation was, in the Attorney General's words, "a matter of grace," ROA.472, not statutory interpretation.  The Attorney General went so far as to assert that a Request recipient's suing for judicial review one day after receipt of the Request, even when within the grace period, is a violation of the statute's "immediately permit" requirement and thus warrants corporate registration revocation.  *See* ROA.473-478.

It was only after Spirit brought this suit that the Attorney General proffered a more conciliatory interpretation of the statute.  But even then, the May 13 Request did not state that the Attorney General would defer any compliance obligation while judicial review was pending, instead stating only that Spirit could "attempt to obtain" judicial review within three weeks.  ROA.441.  Indeed, the Attorney General refused to commit to non-enforcement even for the duration of **this** litigation, ROA.820,

threatening enforcement just weeks ago if the district court did not rule quickly enough, *see* D.Dkt. 62-2.  And, now, the Attorney General's brief to this Court contends that any judicial review is not "without … consequences if [Spirit] loses." Br.23.  In short, the Attorney General has never said that the RTE Statute's text means what the Fourth Amendment requires—namely, that ***the statute*** does not require a Request recipient to permit examination of its records until a penalty-free opportunity for judicial review of the reasonableness of a Request is conducted (or waived).  *Compare Cruz v. Abbott*, 849 F.3d 594, 601 (5th Cir. 2017) (no standing where defendant "stated in an affidavit that his agency 'would not investigate, file criminal charges, or otherwise engage in enforcement activity' against plaintiffs").

Given the RTE Statute's "immediately permit" deadline for compliance, the Attorney General's recent interpretation of that deadline, his retraction of "grace" when a Request recipient recently sought judicial review, his refusal to defer enforcement of the May 13 Request through the pendency of this case, and his assertion that judicial review is not without "consequences," Spirit faces a sufficiently credible threat to establish standing to challenge the RTE Statute's "immediately permit" requirement notwithstanding the Attorney General's wobbly extension of retractable grace.  *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376-377 (5th Cir. 2022) (holding that, given "prosecutorial indecision," unknowable

- 44 -

scope of liability, and risk that conduct was "arguably restricted," plaintiff had

standing to challenge law).

### B.     The RTE Statute Is Unconstitutional In All Its Applications

In a similar vein, the Attorney General contends that Spirit cannot sustain a

facial challenge to the RTE Statute because he "only rarely demands 'immediate'

compliance." Br.30.[14]   In making this argument, the Attorney General ignores

*Patel*'s discussion of facial challenges.

The Attorney General contends that, to prevail on a facial challenge, Spirit

must establish that the RTE Statute is unconstitutional "in all of its applications."

*Village of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982).[15]

But as the Supreme Court made clear in *Patel*, "when assessing whether a statute

meets this standard, the Court has considered only applications of the statute in

which it actually authorizes or prohibits conduct."  576 U.S. at 418.  Thus, "when

addressing a facial challenge to a statute authorizing warrantless searches, the proper

---

[14] The Attorney General does not offer any other supposed applications of the RTE Statute to defeat Spirit's facial challenge.  For example, he does not argue that the statute satisfies the Fourth Amendment's closely regulated industry exception. ROA.410-412 (explaining why RTE Statute lacks safeguards to satisfy that exception); ROA.584 ("The Attorney General does not argue that Spirit operates in a closely regulated industry.").

[15] The Supreme Court has expressed some uncertainty regarding the continuing validity of this standard.  *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008).

focus of the constitutional inquiry is searches that the law ***actually authorizes***," not searches that would otherwise fall into an exception to the Fourth Amendment. *Id.* (emphasis added).

What the RTE Statute actually authorizes is Requests to Examine issued by the Attorney General in his "unlimited" and "unrestricted" discretion, in response to which the recipient must "immediately permit" inspection of its records. *See* Tex. Bus. Orgs. Code § 12.152; *Humble Oil*, 259 S.W.2d at 589. And what the statute authorizes precludes every Request recipient from obtaining precompliance review for reasonableness. Texas sovereign immunity doctrine further serves to prevent every Request recipient from obtaining reasonableness review. Thus, the RTE Statute, in all applications of what it actually authorizes, violates the Fourth Amendment as interpreted in *Patel*.

The Attorney General invokes ***non***-applications of the RTE Statute to argue that it is sometimes constitutionally applied. To the extent he invokes the exigency exception in his effort to defeat a facial challenge (Br.32-33), the Supreme Court has rejected that argument. *Patel*, 576 U.S. at 418-419. The Attorney General also points to evidence that he "almost always provides subpoena recipients weeks to comply" based on his (supposed) "discretion" to set a "deadline to give a corporation

for production." Br.30-31.[16]  But nothing in the RTE Statutes grants the Attorney

General discretionary authority to set the deadline for responding to a Request.

Every recipient of a Request to Examine is statutorily required to "immediately

permit" the Attorney General to inspect.  Tex. Bus. Orgs. Code § 12.152.  Every

Request recipient who fails to immediately permit inspection of its records, as the

statute mandates, is exposed to loss of its registration, and its managers are exposed

to criminal penalties.  *Id.* §§ 12.155, 12.156.

The Attorney General may choose as a "matter of grace" not to seek the

punishment for failure to immediately permit inspection.  ROA.472.  Or he may.  Or

he may initially say he will not enforce the "immediately" requirement, only to

change his mind—as he did in the *Annunciation House* matter.  But he is not

***statutorily*** constrained to allow precompliance review.  His grace is not an

application of the statute, but a non-application of the statute.  And non-applications

of a statute are irrelevant to a facial challenge.  *See Patel*, 576 U.S. at 419 ("[T]he

constitutional 'applications' that petitioner claims prevent facial relief here are

---

[16] Notably, the Attorney General offered no evidence that he ever before invited
Request recipients to file an injunctive action and committed not to oppose
jurisdiction.  *E.g.*, ROA.452.  The first time he made that offer was in the May 13
Request served after this litigation was initiated.  ROA.441.

irrelevant to our analysis because they do not involve actual applications of the statute.").[17]

In any event, the Attorney General has not cited a single instance in which he committed to extend his grace until precompliance judicial review had run its course. He did not in the case of Annunciation House. ROA.459-483. His original March 28 Request here made no reference to judicial review. ROA.426. It was only after Spirit initiated this constitutional challenge that he purported to offer three weeks to allow Spirit to "attempt to obtain" review. ROA.441. When Spirit instead sought to challenge the constitutionality of the RTE Statute, the Attorney General would not commit to forgo enforcement of the May 13 Request through the duration of this litigation, ROA.820, and only weeks ago threatened to enforce that Request if the district judge did not act swiftly enough, D.Dkt. 62-2. Were this Court to reverse the district court's ruling on this facial challenge and send the parties back to the district court to resolve Spirit's as-applied challenge, there is nothing to constrain

---

[17] Even if the RTE Statute grants the Attorney General discretion to delay a Request recipient's compliance obligation, the Attorney General also maintains he can retract that grace if the recipient challenges his authority. *See* ROA.472-478. That interpretation of the RTE Statute does not guarantee anyone an opportunity for judicial review, and thus, even under the Attorney General's reading of the statute, every Request recipient "can only refuse to comply with an officer's demand … at his or her own peril." *Patel*, 576 U.S. at 421; *see also id.* (inspection regime was unconstitutional because "'safeguards may only be invoked at the risk of a criminal penalty'" (quoting *Camara*, 387 U.S. at 533)).

the Attorney General—unless Spirit could quickly obtain a TRO—from enforcing the Request to Examine through a *quo warranto* proceeding while this litigation plays out.

In short, the RTE Statute puts every Request recipient in the position of choosing between immediate compliance or risk of sanctions, a risk mitigated only by gracious non-application of the statute. This is no different than *Patel*, and it is precisely what *Patel* forbids. For a hotel owner asked to present records under the city's ordinance, perhaps the Los Angeles police wouldn't arrest the hotel owner if he refused to comply, or maybe the district attorney wouldn't prosecute—or maybe they would. *Patel* makes clear that the Fourth Amendment does not leave the People exposed to such statutory threats, executive whims, and penal risks. *See* 576 U.S. at 421 (ordinance facially unconstitutional where hotel operator "can only refuse to comply with an officer's demand … at his or her own peril"); *Camara*, 387 U.S. at 532-533 ("The practical effect of [a system where an inspector demands warrantless entry] is to leave the occupant subject to the discretion of the official in the field," which is "precisely the discretion to invade private property which we have consistently circumscribed by a requirement that a disinterested party warrant the need to search."). Opportunity for judicial review must be built into the law, not merely be available by executive grace, if at all. A statute that fails to afford such review is facially unconstitutional because every application of the statute—as

opposed to gracious non-application of the statute—unconstitutionally precludes judicial review. *Patel*, 576 U.S. at 420.

### III. THE ATTORNEY GENERAL'S PROPOSED REVISIONS TO THE RTE STATUTE ARE FOR THE TEXAS LEGISLATURE TO MAKE, NOT FEDERAL COURTS

In a last-ditch effort to save the RTE Statute, the Attorney General invites this Court to rewrite it. But federalism demands that the Attorney General direct his request for amendments to the state Legislature rather than to this Court.

#### A. This Court Cannot Sever The Word "Immediately" From The RTE Statute To Save Its Constitutionality

The Attorney General first urges this Court to sever the word "immediately" from the RTE Statute. Br.35-36. But the Attorney General never made this severance argument in the district court, and so he cannot advance it for the first time on appeal. *See Johnson*, 120 F.3d at 1316.

More fundamentally, severance of the word "immediately" would not save the RTE Statute's constitutionality. With the word "immediately" removed, the RTE Statute would state that, in response to a Request to Examine, a recipient "shall permit the attorney general to inspect, examine, and make copies of the records" (Br.36)—language that mirrors almost exactly that language in the unconstitutional city ordinance at issue in *Patel*. *See* 576 U.S. at 413 (the hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection" (quoting L.A. Mun. Code § 41.49(3)(a)). What is needed to render the

RTE Statute constitutional is not merely removal of the word "immediately" but also substitution of the clause "after opportunity for judicial review" in its place. Indeed, the Attorney General urged the district court to "read in a reasonable time to comply qualifier." ROA.952; *see also* Br.37. Neither the district court nor this Court, however, can "write words into the statute," *Geeslin v. State Farm Lloyds*, 255 S.W.3d 786, 791 n.5 (Tex. App. 2008), especially when those words would subject the Attorney General to suit without the Legislature's authorization, *see* Tex. Gov't Code § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language"). Severance of an unconstitutional statutory provision is permitted only if what "remains is … capable of being executed in accordance with the apparent legislative intent," *Western Union Telegraph Company v. State*, 62 Tex. 630, 634 (1884), not in order to alter legislative intent.

## B. The Attorney General Can Still Investigate Corporations Created By Or Operating Within Texas

The Attorney General complains that facial invalidation of the RTE Statute does "great violence … to Texas state sovereignty." Br.32. In his view, "[o]perating as a corporation in Texas is a privilege," the condition for which is that corporations must "allow the Attorney General to see their books." *Id.* But the Supreme Court long ago rejected this argument, warning (the year before the RTE Statute was

enacted) that, though a corporation is a creature of the state, a state's visitorial statute must comply with the Fourth Amendment. *See Hale v. Henkel*, 201 U.S. 43, 75-76 (1906).

States are, of course, free to investigate corporations in a manner consistent with the Constitution. As the magistrate judge explained, the narrow question here "is whether the RTE Statute is the proper vehicle with which to request information from filing entities within the state." ROA.829. It is not. But the Attorney General has at his disposal various other statutes "to serve this purpose in a constitutional fashion," ROA.829, as those statutes expressly afford the corporation from which documents are demanded the opportunity for judicial review.

It appears, however, that denying Spirit that judicial review is at the core of the Attorney General's election to use the RTE Statute. The Attorney General claims (ROA.972) the conduct he is investigating is covered by the Texas Deceptive Trade Practices Act ("DTPA"), which authorizes him to issue a civil investigative demand. Tex. Bus. & Com. Code § 17.61(b)(3). But the DTPA provides for precompliance judicial review of a civil investigative demand. *Id.* § 17.61(g). The Attorney General's concern appears to be that, afforded the opportunity for judicial review, Spirit would have arguments that a civil investigative demand issued pursuant to the

DTPA does not reach out-of-state conduct by an out-of-state corporation.[18]  *See* ROA.972.   Denying Spirit the opportunity to obtain judicial review of those arguments does violence to the sovereignty of ***other*** states to govern conduct occurring within their borders without interference from Texas.  *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421 (2003) ("A State cannot punish a defendant for conduct that may have been lawful where it occurred."); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) ("[I]t would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State ... without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends.").

### C.    Texas State Sovereignty Is Protected By Allowing The Texas Legislature To Rewrite Its Statutes

The Attorney General responds that that the district court's invalidation of the RTE Statute has "revived the emergency" that existed in 1907 when the RTE Statute was enacted because "no statute expressly empowered the Attorney General to demand corporate records." Br.1.  This concern is overblown.

Since 1907, the Texas Legislature has enacted numerous statutes that empower the Attorney General to demand corporate records.   If the facial

---

[18] *See supra* note 3.

invalidation of the RTE Statute has created a genuine emergency, the Texas Legislature has been in session since January 14, 2025,[19] and can easily remedy the constitutional infirmity of the RTE Statute. But the policy judgments that involves are not for courts to make on the Legislature's behalf. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 76 (1996) (court is not "free to rewrite the statutory scheme in order to approximate what [it] think[s] [legislature] might have wanted had it known that [enacting the statute] was beyond its authority. If that effort is to be made, it should be made by [legislature].").  And federal courts especially "will not rewrite a state law to conform it to constitutional requirements." *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 397 (1988).

## CONCLUSION

For the foregoing reasons, Spirit respectfully requests that this Court affirm the district court's judgment.[20]

---

[19] Legislative Reference Library of Texas, https://lrl.texas.gov/sessions/ sessionyears.cfm (visited Feb. 3, 2025).

[20] In his conclusion, the Attorney General requests that this Court reverse and direct the district court to enter summary judgment in his favor. Br.38. But, in opposing the Attorney General's summary judgment motion, Spirit requested the opportunity to conduct discovery if the district court believed the evidence introduced by the Attorney General was relevant to summary judgment. ROA.614, ROA.635. That request, on which the district court did not rule, precludes entry of summary judgment for the Attorney General even were this Court to reverse the entry of summary judgment for Spirit.

Respectfully submitted.

DARREN L. MCCARTY
MCCARTY LAW PLLC
1410B West 51st Street
Austin, TX 78756
(512) 827-2902

/s/  *Matthew T. Martens*
MATTHEW T. MARTENS
JACLYN N. MOYER
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Ave, NW
Washington, DC 20037
(202) 663-6921

LEAH M. FUGERE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 S. Grand Ave., 24th Floor
Los Angeles, CA 90071
(213) 443-5336

February 3, 2025

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B).

1.    Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 12,986 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font.  As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.


_/s/  Matthew T. Martens_
MATTHEW T. MARTENS

February 3, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of February, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system.  Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/  *Matthew T. Martens*
MATTHEW T. MARTENS